BUTTERMILK FARMS, LLC *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN
OF PLYMOUTH
(SC 18244)

Rogers, C. J., and Norcott, Katz, Zarella and McLachlan, Js.

---

Argued March 17—officially released June 30, 2009

*William J. Tracy, Jr.*, for the appellant (plaintiff).

*Salvatore V. Vitrano*, for the appellee (defendant).

*Opinion*

NORCOTT, J. In this appeal, we address a question left open by our prior decision in *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 628 A.2d 1277 (1993), namely, whether General Statutes § 8-25[1] authorizes a planning and zoning commission, as a

---

[1] General Statutes § 8-25 (a) provides in relevant part: "No subdivision of land shall be made until a plan for such subdivision has been approved by the [planning] commission. . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. . . . Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, sewerage and drainage, including the upgrading of any downstream ditch, culvert or other drainage structure which, through the introduction of additional drainage due to such subdivision, becomes undersized and creates the potential for flooding on a state highway, and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision shall be made for protective flood control measures and that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of conservation and development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. Such regulations shall also provide that the commission may require the provision of open spaces, parks and playgrounds when, and in places, deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. . . . Such regulations, on and after July 1, 1985, shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. . . . The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installations previous to the final approval of a plan, the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. Such regulations may provide, in lieu of the completion of the work and installations above referred to, previous to the final approval of a plan, for an assessment or other method whereby the municipality is put in an assured position to do such work and make such installations at

condition of its approval of a subdivision application, to require the developer of a proposed subdivision of land to improve existing roads that do not intersect with either other existing roads or proposed thoroughfares. The plaintiff, Buttermilk Farms, LLC, appeals[2] from the judgment of the trial court, dismissing its appeal from the denial of its subdivision application by the defendant, the planning and zoning commission of the town of Plymouth (commission). On appeal, the plaintiff claims that the trial court improperly concluded that the commission had not exceeded its statutory authority under § 8-25 by denying the plaintiff's subdivision application because the plaintiff refused to include off-site sidewalks in its subdivision plan. We agree and, accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On October 6, 2006, the plaintiff filed an application with the commission seeking approval of a proposed subdivision of its thirty-eight acre property, located in the town of Plymouth (town),

the expense of the owners of the property within the subdivision. Such regulations may provide that in lieu of either the completion of the work or the furnishing of a bond as provided in this section, the commission may authorize the filing of a plan with a conditional approval endorsed thereon. Such approval shall be conditioned on (1) the actual construction, maintenance and installation of any improvements or utilities prescribed by the commission, or (2) the provision of a bond as provided in this section. Upon the occurrence of either of such events, the commission shall cause a final approval to be endorsed thereon in the manner provided by this section. Any such conditional approval shall lapse five years from the date it is granted, provided the applicant may apply for and the commission may, in its discretion, grant a renewal of such conditional approval for an additional period of five years at the end of any five-year period, except that the commission may, by regulation, provide for a shorter period of conditional approval or renewal of such approval. . . ."

[2] The Appellate Court granted the plaintiff's petition for certification to appeal from the judgment of the trial court; see General Statutes § 8-8 (o); and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

into five buildable residential lots. Each of the proposed lots abuts the southeast side of Lane Hill Road, a narrow and winding road that is in poor condition because of its steep slopes and heavily wooded surroundings. According to the surveyor's map submitted by the plaintiff in support of its application, the Lane Hill Road right-of-way spans fifty feet, which includes the thirty foot wide paved portion of the road and a ten foot unpaved strip of land on either side. The entire frontage of the proposed subdivision abuts the ten foot strip of unpaved land on the southeast side of the road. The plaintiff's application did not propose the construction of any new roads exclusively within the subdivision; nor did it propose any new roads that would intersect with Lane Hill Road.

The commission received the plaintiff's application at its meeting on October 12, 2006, at which time the commission informed the plaintiff that, inter alia, it was required to include a sidewalk along the unpaved shoulder of Lane Hill Road adjacent to its property before its application could be approved. Thereafter, the commission held a series of public hearings on the application. At the December 14, 2006 meeting, the plaintiff indicated to the commission that it had revised its subdivision plan to include the sidewalk, but that it intended to apply for a waiver or deferment of that requirement in accordance with the town subdivision regulations. See footnote 5 of this opinion. After reviewing § 8-25 and the case law interpreting it, however, the plaintiff subsequently determined that the commission did not have authority under that statute to compel the plaintiff to include the sidewalk in its application because the shoulder of Lane Hill Road where the sidewalk was to be located fell outside the boundaries of the proposed subdivision and, therefore, was considered off-site. Accordingly, the plaintiff removed the proposed sidewalk from its revised subdi-

vision plan and, at the public hearing on March 1, 2007, withdrew its request for a waiver of the sidewalk requirement.

At its March 22, 2007 public hearing, the commission subsequently discussed the issue of whether it had the authority under § 8-25 to compel the plaintiff to install the sidewalk. More specifically, the commission raised the question of who owned the land on which the sidewalks were to be constructed. In connection with this point, the commission referenced a letter that it had received from the town attorney, Tom Conlin, in which he stated that, according to his review of the town records, although Lane Hill Road was an " 'accepted' " roadway, it had not been approved by, or deeded to, the town. The plaintiff maintained that it did not own either the road or the strip of land between the road and the boundary of the proposed subdivision because that land had not been included in its deed for the subject property. The plaintiff further maintained that, regardless of who owned the land, the required sidewalks were off-site because they did not fall within the boundaries of the proposed subdivision and, accordingly, the commission did not have authority under § 8-25 to compel the plaintiff to include the sidewalks in its proposed subdivision.

At its final public hearing on the matter on May 10, 2007, the commission further discussed whether it had the authority to compel the plaintiff to include the sidewalk in its plans. More specifically, Patrick Herzing, the chairman of the commission, expressed his understanding that the subdivision regulations, at the very least, required the plaintiff to show the sidewalks on the subdivision map, even if the plaintiff believed that it could not actually be required to install them if the subdivision application was approved. Due to the poor quality of Lane Hill Road, Herzing also indicated a concern for the health and safety of the residents if the

sidewalks were not installed. Thereafter, having reviewed the applicable regulations further, the commission voted unanimously to deny the plaintiff's application "for failure to show sidewalks on project site per [§] 2.04[3] [of the Plymouth subdivision regulations] [a]pplication [r]equirements, [§] 4.04[4] [of the Plymouth subdivision regulations] [p]lan and [p]rofile, and [§] 5.04[5] [of the Plymouth subdivision regulations] [s]idewalk, and for concern for health, safety and welfare to future residents. Also reference memo from Attorney Conlin dated April 26, 2007 including all supporting documentation therein."

The plaintiff appealed from the commission's denial of its application to the trial court, claiming that the

[3] Section 2.04 (4) of the Plymouth subdivision regulations requires a developer to provide, inter alia, "[p]lan and profile drawings and typical cross sections of all proposed streets, storm drains, sanitary sewers, catch basins, manholes, ditches, watercourses, headwalls, gutters, sidewalks, curbs, bridges, culverts, and other structures and improvements. . . ."

[4] Section 4.04 of the Plymouth subdivision regulations requires that, inter alia, the developer's plan and profile drawings provide: "a. The layout of proposed streets in both plan and profile, coordinated by stations, indicating the right-of-way dimensions as shown on the subdivision plan; the width of the right-of-way; the width of the pavement; existing and proposed grades at the center lines and at both street lines with stations every [fifty] feet; vertical curve elevations at the beginning of the curve, end of the curve, intersection of the tangent lines and intermediate points every [fifty] feet; percent of grade; length of vertical curves. Where required by the [c]ommission, street intersections shall be drawn at a larger scale to show proposed grading in greater detail.

"b. Typical street cross-sections indicating right-of-way, pavement structure, curbs, sidewalks and back-of-walk grading. Additional cross-sections may be required. . . ."

[5] Section 5.04 of the Plymouth subdivision regulations provides in relevant part: "(1) Existing Streets—Where a subdivision abuts an existing street, a sidewalk shall be installed on the subdivision side of such street for the entire frontage of the subdivision. Due care shall be taken in locating such sidewalks in order to preserve existing trees. Additional easement areas for sidewalks beyond the established right of way may be required to accomplish tree preservation.

"(2) Waiver—Any request for a waiver of sidewalk installation shall be made in writing by the subdivider at the time of submission of an application for subdivision approval. . . ."

commission had exceeded its statutory authority by requiring the plaintiff to include an off-site sidewalk in its subdivision plan. In response, the commission asserted that, although it does have the authority to require off-site improvements under § 8-25, that issue did not have to be decided in light of the fact that, according to the commission, the sidewalks were not off-site improvements because the plaintiff owned the land on which the sidewalks were to be installed. In rejecting that argument, the trial court determined that "the sole reason given by the commission for the denial of the permit was the plaintiff's failure to comply with [§§ 2.04, 4.04 and 5.04 of the subdivision regulations], requiring the inclusion of sidewalks along Lane Hill Road in its plans." The trial court concluded that the commission had assumed that the required sidewalks fell entirely within the public highway and, therefore, were off-site improvements. Accordingly, the trial court refused to look beyond the commission's stated reason for denying the application to determine if the *real* reason was that the plaintiff had refused to include the necessary on-site improvements in its subdivision plan. The trial court then interpreted § 8-25 as providing general authority for the commission to enact regulations to protect the health and safety of the public, and concluded that § 5.04 of the town subdivision regulations, which requires the construction of sidewalks on the subdivision side of an existing abutting town road; see footnote 5 of this opinion; is valid under § 8-25 as reasonably related to the maintenance of the public health and safety. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly concluded that § 8-25 grants the commission the authority to adopt regulations under which the commission could require the plaintiff to install[6] off-

---

[6] We note that, although the commission included in its reasons for denying the application the plaintiff's failure to "show" sidewalks on the subdivision map, the trial court interpreted the commission's denial as having been

site sidewalks as a condition of approval of its proposed subdivision. More specifically, the plaintiff contends that, although § 8-25 grants a planning commission the authority to compel a developer to make off-site improvements to an existing road when that road *intersects* with a new road proposed by the developer, in the absence of such an intersection, the language of § 8-25 limits the authority of a planning commission to regulate subdivisions to "the land to be subdivided," which does not include abutting public streets that are outside the boundaries of the proposed subdivision. The plaintiff further contends that allowing the commission to require such off-site improvements under the guise of a general authority to promote public health and safety would exceed the authority that the legislature intended to bestow under § 8-25 and would be inconsistent with the broader statutory scheme developed by the legislature with respect to the maintenance of municipal highways. In response, the commission concedes for the purposes of this appeal that the location of the sidewalk is not within the subdivision plan and, consequently, is off-site,[7] but the commission nev-

premised on the plaintiff's failure to actually include them in its plans. Neither party disputes the trial court's interpretation of the commission's decision, and both parties contend on appeal that the commission's sole reason for denying the application was the plaintiff's failure to include the sidewalks in its plans, and not merely its failure to reflect sidewalks on the map for future installation by the town. Indeed, that interpretation of the commission's decision is supported by the fact that the commission cited as authority for its decision §§ 2.04 and 4.04 of the town subdivision regulations, both of which only require the applicant to show *proposed* sidewalks, and § 5.04 of the town subdivision regulations, which requires the applicant to actually install sidewalks on the subdivision side of existing abutting streets. See footnotes 3 through 5 of this opinion. Accordingly, we focus our analysis, as do the parties in their briefs, on the commission's authority under § 8-25 to require the installation of off-site sidewalks.

[7] We note that the trial court concluded that the commission had assumed that the sidewalks were off-site, and the commission does not dispute that conclusion on appeal. Accordingly, we need not address that threshold issue here. See *Property Group, Inc.* v. *Planning & Zoning Commission*, supra, 226 Conn. 692–95 (addressing threshold issue of whether improvements were off-site, and concluding that they were off-site because, regardless of

ertheless contends that the language of § 8-25 and public policy considerations support the trial court's decision.[8] We agree with the plaintiff, and we conclude, therefore, that the trial court improperly dismissed the plaintiff's appeal.

It is well established that, "as a creation of the state, a municipality [whether acting itself or through its planning and zoning commission] has no inherent powers of its own . . . and that [it] possesses only such rights and powers that have been granted *expressly* to it by the state . . . ." (Citation omitted; emphasis added.) *Blue Sky Bar, Inc.* v. *Stratford*, 203 Conn. 14, 19, 523 A.2d 467 (1987). "Thus, while the state may have inherent power to regulate in the interest of public health, safety, morality and welfare . . . [i]n connection with [municipal regulations], it is a cardinal principle of construction that provisions and amendments must be enacted pursuant to the . . . enabling statute." (Citation omitted; internal quotation marks omitted.) *Capalbo* v. *Planning & Zoning Board of Appeals*, 208 Conn. 480, 490, 547 A.2d 528 (1988).[9] In determining whether a particular regulation "[is] within the authority of the commission to enact, [therefore] we do not search for a statutory prohibition against such an enact-

who owned land on which improvements were to be installed, improvements fell outside boundaries of proposed subdivision).

[8] In addition to claiming that the trial court's decision was proper, the commission appears to urge us to resolve confusion over the proper standard to apply in determining whether a subdivision regulation effects a taking, namely, whether the exaction must be "reasonably related" or "uniquely and solely attributable" to the proposed subdivision. Compare, e.g., *Raybestos-Manhattan, Inc.* v. *Planning & Zoning Commission*, 186 Conn. 466, 471, 442 A.2d 65 (1982), with *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission*, 160 Conn. 109, 119, 273 A.2d 880 (1970). Because we conclude that the commission did not have the statutory authority to require the sidewalks in the first place, however, we need not resolve that issue in this appeal.

[9] The enabling statute in the present case is § 8-25, which empowers a planning and zoning commission to adopt regulations concerning the subdivision of land.

ment; rather, we must search for statutory authority for the enactment." *Avonside, Inc.* v. *Zoning & Planning Commission*, 153 Conn. 232, 236, 215 A.2d 409 (1965).

In addition, because subdivision regulations adopted by a planning and zoning commission are in derogation of common-law property rights, the scope of the enabling statute granting the power to adopt such regulations should not be extended by construction beyond the fair import of its language, or to include by implication that which is not clearly within its express terms. *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 208 Conn. 490–91; see also, e.g., *Blumenthal* v. *Barnes*, 261 Conn. 434, 463, 804 A.2d 152 (2002) ("[a]n enumeration of powers in a statute is uniformly held to forbid things not enumerated" [internal quotation marks omitted]); *Cristofaro* v. *Burlington*, 217 Conn. 103, 107, 584 A.2d 1168 (1991) (regulation improper because § 8-25 does not authorize planning commission to adopt or amend zoning ordinances); *Finn* v. *Planning & Zoning Commission*, 156 Conn. 540, 545–46, 244 A.2d 391 (1968) (regulation improper because § 8-25 does not authorize planning commission to require submission of preliminary approval application as condition precedent to final approval of application); *Avonside, Inc.* v. *Zoning & Planning Commission*, supra, 153 Conn. 237 (regulation authorizing commission to levy charge on developer improper because such power not included in § 8-25); *Peninsula Corp.* v. *Planning & Zoning Commission*, 151 Conn. 450, 452, 199 A.2d 1 (1964) (regulation improper because § 8-25 does not authorize planning commission to adopt regulations modifying statutory definitions); *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn. App. 303, 311, 547 A.2d 569 (1988) (denial of subdivision application improper because neither § 8-25 nor General Statutes § 8-26 authorizes commission to adopt blanket prohibition on

future subdivisions without reference to local subdivision regulations or enabling statutes).

In the present case, therefore, we are required to interpret the language of § 8-25, which authorizes the commission to adopt regulations concerning the subdivision of land, to determine whether such authority includes the ability to require off-site sidewalks under the facts presented. This "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 10, 961 A.2d 373 (2009).

We begin with the language of the statute. Section 8-25 (a) provides in relevant part: "No subdivision of land shall be made until a plan for such subdivision has

been approved by the [planning] commission. . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. . . . Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, sewerage and drainage, including the upgrading of any downstream ditch, culvert or other drainage structure which, through the introduction of additional drainage due to such subdivision, becomes undersized and creates the potential for flooding on a state highway, and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision shall be made for protective flood control measures and that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of conservation and development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. Such regulations shall also provide that the commission may require the provision of open spaces, parks and playgrounds when, and in places, deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. . . . Such regulations, on and after July 1, 1985, shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. . . ."

Thus, § 8-25 contains several specific grants of power to the commission, including, for example, the authority to provide for: (1) water, sewers and drainage for the subdivision; (2) flood control measures; (3) harmonious and safe intersections between proposed streets and existing or proposed principal thoroughfares; (4) a con-

venient system for present and prospective traffic needs; (5) appropriate parks and open spaces; and (6) soil erosion and sediment control. In the absence of an intersection between a proposed street and an existing street, however, none of those enumerations reasonably can be interpreted to confer upon the commission the authority to require the installation of sidewalks on an existing road that abuts a proposed subdivision. See *Property Group, Inc.* v. *Planning & Zoning Commission*, 29 Conn. App. 18, 23, 613 A.2d 1364 (1992) ("[t]here is nothing in § 8-25 that authorizes a planning commission to require a developer to improve an existing abutting public highway where no intersecting subdivision streets are being created"), aff'd, 226 Conn. 684, 628 A.2d 1277 (1993); see also *Reed* v. *Planning & Zoning Commission*, 208 Conn. 431, 435–36, 544 A.2d 1213 (1988) (§ 8-25 does not "address problems relating to existing roads").

On appeal to this court, therefore, the commission relies, as the trial court appears to have done in its memorandum of decision, on its authority under § 8-25 (a) to "provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety" as its justification for requiring the sidewalks. That grant of authority under § 8-25 (a), however, clearly and unambiguously is restricted to "*the land to be subdivided*"; (emphasis added); a limitation that we have stated reasonably cannot be interpreted to include abutting streets or other areas outside the boundaries of the proposed subdivision. See *Property Group, Inc.* v. *Planning & Zoning Commission*, supra, 226 Conn. 692 (" 'land to be subdivided' does not include abutting public streets, and 'proposed streets' does not embrace an existing public street"). Were we to construe § 8-25 to include a broad power to regulate health and safety beyond the limits of "the land to be subdivided," we

would, in effect, have to read the limiting language of that provision out of the statute, which is something that we simply cannot do. See *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 297, 933 A.2d 256 (2007) ("[s]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant" [internal quotation marks omitted]). Thus, although the commission clearly has the authority under the health and safety provision of § 8-25 to require the installation of sidewalks and other reasonable health and safety measures *within* the boundaries of the proposed subdivision, in the absence of an intersection between a proposed street and an existing street, that provision just as clearly precludes the commission from requiring such measures on land *outside* of those boundaries.[10] Keeping in mind that the commission "possesses only such rights and powers that have been granted *expressly* to it by the state"; (emphasis added) *Blue Sky Bar, Inc.* v. *Stratford*, supra, 203 Conn. 19; and that the powers of the commission should not be extended by construction beyond the fair import of the language of the enabling statute or to include by implication that which is not clearly within the express terms of that statute; *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 208 Conn. 490–91; we conclude that the language of § 8-25 clearly and unambiguously does not grant the commission the authority to require off-site sidewalks on existing roads

---

[10] We note that the Appellate Court's decision in *Weatherly* v. *Planning & Zoning Commission*, 23 Conn. App. 115, 121, 579 A.2d 94 (1990), is not necessarily to the contrary. As we emphasized in *Property Group, Inc.* v. *Planning & Zoning Commission*, supra, 226 Conn. 693–94 n.7, the decision in *Weatherly* was limited to the fact that the regulation in that case as applied did not require the developer to pay for or make any off-site improvements but, rather, required the developer to dedicate a portion of the land to be subdivided for the widening of the abutting street. See *Weatherly* v. *Planning & Zoning Commission*, supra, 123.

under the guise of a general power to regulate public health and safety.[11]

Moreover, our interpretation of the limits of the public health and safety provision of § 8-25 is supported by and consistent with the broader statutory scheme relating to municipal responsibility over existing roads. General Statutes § 13a-99,[12] for example, unambiguously places on Connecticut towns the obligation to construct and maintain in a reasonably safe condition all necessary highways within their borders. See also, e.g., General Statutes §§ 13a-63, 13a-103 and 13a-149 (relating to, respectively, remedies for town's failure to lay out, adequately maintain, and make necessary improvements to its highways). Although General Statutes § 7-163a permits a municipality to shift the burden of maintenance to abutting landowners with respect to snow and ice removal on sidewalks, there is no comparable statute allowing it to do so with respect to the construction and general maintenance of its roads. It would be unreasonable, therefore, to interpret § 8-25 so broadly as to include a general health and safety provision unmoored to the limiting language of that

[11] We limit our conclusion herein to the commission's authority under the health and safety provision of § 8-25 to adopt regulations requiring off-site improvements to existing roads. We acknowledge that there may be other circumstances in which the statute *does* authorize a commission to adopt regulations requiring off-site improvements, including the existence of an intersection between proposed and existing streets, the creation of drainage problems to downstream culverts caused by the proposed subdivision, when such improvements are necessary to create harmony between proposed roads and existing thoroughfares, and any other circumstances that are consistent with the language of the statute and our case law interpreting it.

[12] General Statutes § 13a-99 provides: "Towns shall, within their respective limits, build and repair all necessary highways and bridges, and all highways to ferries as far as the low water mark of the waters over which the ferries pass, except when such duty belongs to some particular person. Any town, at its annual meeting, may provide for the repair of its highways for periods not exceeding five years and, if any town fails to so provide at such meeting, the selectmen may provide for such repairs for a period not exceeding one year."

statute, and thereby allow a town, through its planning commission, to avoid its statutory mandate under § 13a-99 by shifting the obligation and cost of maintaining and improving its highways in a safe manner onto an abutting developer.

In addition, there already is in place a separate statutory mechanism allowing the commission to protect the health and safety concerns at issue here in the event that it is unable to do so through the adoption of subdivision regulations pursuant to § 8-25. Specifically, General Statutes § 8-29 grants the commission the authority to prepare and file its own surveys, maps or plans of proposed improvements to existing roads and sidewalks and, after approving such plans, assess the benefits accruing to and damages sustained by such improvements to the owners of the land depicted within the map or survey. See also General Statutes § 13a-83 (authorizing town selectmen to "assess, or cause to be assessed, the benefits accruing to any person by the layout, grading or alteration of any highway therein . . . and order such benefits to be paid by the parties assessed . . . to the town . . . within such time as they appoint"). Thus, the town already has statutory authority to propose, construct and pass on to abutting landowners the costs of off-site improvements to existing roads that are necessary for the maintenance of public health and safety. Regardless of whether the developer or the town bears the responsibility and initial cost of making such improvements, therefore, the financial burden can and presumably will be passed on—whether through an increased purchase price from the developer or an assessment by the town—to the subsequent owners of the land within the subdivision. In light of the town's obligation to build and maintain the roads within its borders, however, and in the absence of a clear and specific statutory authority under § 8-25 for the commission to pass this burden onto developers

with respect to improvements that are off-site, we conclude that it is appropriate for the town to bear this initial burden, and not the developer. See *Avonside, Inc.* v. *Zoning & Planning Commission,* supra, 153 Conn. 238 ("The state has seen fit to impose upon the towns various duties and burdens, such as maintenance of highways not specifically maintained by the state . . . . [This duty is] expensive to carry out and may require the employment of professional personnel. But the towns have no right of reimbursement therefor except as particularly authorized by statute.").

The judgment of the trial court is reversed and the case is remanded to that court with direction to sustain the plaintiff's appeal.

In this opinion the other justices concurred.