******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LOIS DEMAYO ET AL. *v.* MICHAEL D. QUINN
(SC 19343)

Palmer, Zarella, Eveleigh, Espinosa and Robinson, Js.

*Argued September 22—officially released December 23, 2014*

*Daniel J. Klau*, for the appellant (defendant).

*Eliot B. Gersten*, with whom were *Craig C. Fishbein*, and, on the brief, *Lee D. Hoffman* and *Megan Y. Carannante*, for the appellees (plaintiffs and intervening plaintiff).

*Opinion*

EVELEIGH, J. The defendant, Michael D. Quinn, appeals from the judgment of the trial court granting the writ of quo warranto filed by the plaintiffs, certain taxpayers of the city of Meriden (city),[1] and ordering his removal from the office of corporation counsel. On appeal, the defendant asserts that the trial court improperly determined that the Meriden City Charter (charter) clearly and unambiguously requires the mayor to recommend all appointments to officers or positions within the city.[2] We disagree, and accordingly, affirm the judgment of the trial court.

The record discloses the following facts and procedural history, as stipulated to by the parties. "The [plaintiffs] each have standing to sustain this action, sounding in quo warranto. . . . The plaintiffs are registered to vote in the city . . . and did so vote in the municipal elections that took place on November 5, 2013. . . . As a result of the municipal elections that took place on November 5, 2013, Manuel A. Santos was elected mayor . . . . On December 12, 2013, at approximately 9:00 a.m., [Santos] was sworn into office, succeeding Michael Rohde as mayor . . . .

"On or about November 29, 2013, the . . . [c]ity [c]ouncil created and posted an agenda for a city council meeting to take place on December 2, 2013, at 7:00 p.m. . . . The agenda for [that] meeting was created to the exclusion of [Santos]. . . . Prior to the . . . meeting, [Santos] attempted to make his own recommendation for an appointee as corporation counsel for the city . . . however his recommendation(s) were rejected by the majority leader of the city council, Brian Daniels. . . . On December 2, 2013, at approximately 7:00 p.m., [Santos] convened, and presided over the . . . meeting. . . . The first item on the agenda for the . . . meeting was [labeled], 'Res. re: appointment of [the defendant] as corporation counsel.' . . . [The defendant] is an attorney, licensed to practice law in the state of Connecticut, who had previously been appointed during [Rhode's administration] to serve as corporation counsel for the city . . . . [The defendant] was never recommended by [Santos] for consideration by the city council as an appointee for the position of corporation counsel for the city . . . ."

The trial court determined as follows: "Here, it is stipulated that the city council acted upon the recommendation of [Rhode, who was] the former mayor, [and] not [Santos] who was currently holding the office [of mayor]. Inasmuch as the condition precedent to [the] city council's appointing power was not met, the city council had no power to make the appointment at issue here. Accordingly, the defendant has not, and cannot, meet his burden to show that he is entitled to the office he now holds." (Internal quotation marks omitted.)

On appeal, the defendant asserts that the trial court improperly determined that the charter clearly and unambiguously requires the mayor to recommend all appointments to offices or positions within the city and refused to consider extratextual evidence regarding the intent of the drafters of the charter. We disagree with this contention.

We begin with the standard of review. The determination of whether the trial court properly granted the plaintiffs' writ of quo warranto on the basis that the defendant's appointment to the office of corporation counsel violated the charter presents a question of law over which our review is plenary. See *Bateson* v. *Weddle*, 306 Conn. 1, 13–14, 48 A.3d 652 (2012); *Stewart* v. *Watertown*, 303 Conn. 699, 710, 38 A.3d 72 (2012). "Because our resolution of this issue requires us to construe provisions of [a municipal] charter, we apply principles of statutory interpretation. See, e.g., *Bridgeman* v. *Derby*, 104 Conn. 1, 8, 132 A. 25 (1926) ([a]s we seek to interpret this provision of [the applicable] charter, it will be well to keep before us some of the fundamental principles of statutory construction).

"Furthermore, with respect to the construction of the provisions in a municipal charter, [i]t is well established that, as a creation of the state, a municipality . . . has no inherent powers of its own . . . and that [it] possesses only such rights and powers that have been granted expressly to it by the state . . . . *Buttermilk Farms, LLC* v. *Planning & Zoning Commission*, 292 Conn. 317, 326, 973 A.2d 64 (2009). Therefore, [w]here a charter specifies a mode of appointment, strict compliance is required. *State ex rel. Gaski* v. *Basile*, [174 Conn. 36, 39, 381 A.2d 547 (1977)]. More specifically, [i]f the charter points out a particular way in which any act is to be done or in which an officer is to be elected, then, unless these forms are pursued in the doing of any act or in the electing of the officer, the act or the election is not lawful. *State ex rel. Southey* v. *Lasher*, 71 Conn. 540, 546, 42 A. 636 (1899); see also *State ex rel. Barlow* v. *Kaminsky*, 144 Conn. 612, 620, 136 A.2d 792 (1957) (A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way. An enumeration of powers in a statute is uniformly held to forbid the things not enumerated.)." (Emphasis omitted; internal quotation marks omitted.) *Bateson* v. *Weddle*, supra, 306 Conn. 14.

We turn first to the language of the provisions of the charter relating to the appointment of corporation counsel. Section C7-3 of the Meriden City Charter, which pertains to the city's department of law, provides in relevant part: "The [c]ity [c]ouncil shall appoint and may remove a [c]orporation [c]ounsel who shall be an attorney at law admitted to practice law in this state, in good standing as a member of the Connecticut [b]ar

and who has been in active practice of his/her profession in Connecticut for at least five years. He/she shall appear for and protect the rights of the [c]ity in all actions, suits or proceedings brought by or against it or any of its departments, officers, agencies, boards or commissions . . . ." By its plain terms, § C7-3 provides that the city council has appointing authority for the position of corporation counsel. Section C7-3 does not indicate what role, if any, the mayor has in the appointment of corporation counsel for the city.

Section C7-3 of the charter, however, must be read in conjunction with the other provisions of the charter. "In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) *Fennell* v. *Hartford*, 238 Conn. 809, 826, 681 A.2d 934 (1996); see also *Broadnax* v. *New Haven*, 270 Conn. 133, 161, 851 A.2d 1113 (2004). Section C3-3J of the charter, which is entitled "How appointments by [c]ity [c]ouncil are made," is one such provision, and provides in relevant part: "The [m]ayor shall recommend any and all appointments to officers or positions within the appointing power of the [c]ity [c]ouncil (except as to chairpersons of the standing committees to the [c]ity [c]ouncil) for approval. The [c]ity [c]ouncil may, within its next two regular meetings after submission of a recommendation by the [m]ayor, reject said recommendation by majority vote of the entire membership except as herein otherwise specified, in failure of which said recommendation shall be deemed confirmed. . . ."

In interpreting statutory text, this court has often stated that " 'the use of the word "shall," though significant, does not invariably create a mandatory duty. . . . The usual rule, however, is that [t]he . . . use of the word "shall" generally evidences an intent that the statute be interpreted as mandatory.' " *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 78, 676 A.2d 819 (1996). Therefore, although not dispositive, the use of the phrase "[t]he [m]ayor *shall* recommend any and all appointments" in § C3-3J of the charter suggests that the recommendation of the mayor is a mandatory prerequisite to the appointment of officers or positions within the appointing power of the city council. (Emphasis added.)

Indeed, a review of the entire text of § C3-3J of the charter indicates that the drafters of the charter went to great lengths to address what happens if the city council rejects the mayor's initial recommendation. Specifically, § C3-3J of the Meriden City Charter provides that "[i]n the event the [c]ity [c]ouncil rejects the [m]ayor's recommendation, the [m]ayor, before the next regularly scheduled meeting of the [c]ity [c]ouncil,

shall recommend another individual for appointment." Section C3-3J then goes on to allow for the city council to approve or reject the mayor's second recommendation: "At its next regularly scheduled meeting, the [c]ity [c]ouncil may reject said recommendation by majority vote of the entire membership except as herein otherwise specified, in failure of which said recommendation shall be deemed confirmed." Section C3-3J then provides that, "[i]n the event the [c]ity [c]ouncil rejects the [m]ayor's recommendation by majority vote of the entire membership, the [m]ayor, before the next regularly scheduled meeting of the [c]ity [c]ouncil, shall recommend another individual for appointment, said individual not being an individual previously rejected by the [c]ity [c]ouncil for this appointment." Section C3-3J finally provides that, "[i]n the event that the [c]ity [c]ouncil votes to reject the three individuals recommended by the [m]ayor for appointment to a particular position, at the next regularly scheduled [c]ity [c]ouncil meeting, the [c]ity [c]ouncil shall, by a majority vote of the entire membership, select one of the three individuals previously recommended by the [m]ayor for the appointment." The detailed provisions allowing for the mayor to make, and for the city council to accept or reject, up to three recommendations for officers and positions for which the city council has appointing authority is further evidence that the recommendation of the mayor is a prerequisite to the city council's appointment of an officer or position within the city. The fact that the charter requires that the city council ultimately appoint one of the three individuals recommended by the mayor is also strong evidence that the recommendation of the mayor is a prerequisite to being appointed as an officer or to a position in the city.

Moreover, the language of § C3-3J of the charter that exempts chairpersons of the standing committees to the city council from the requirement of the subsection is instructive. It is a long-standing principle of statutory construction that "[w]here there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied." 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:11, pp. 329–30; see also *Hoard* v. *Sears Roebuck & Co.*, 122 Conn. 185, 193, 188 A. 269 (1936) ("[t]he express mention of one exception . . . excludes others"). Accordingly, the fact that the charter explicitly provides that the mayor is not required to recommend chairpersons of standing committees in order for them to be appointed by the city council supports the conclusion that the requirement that the mayor recommend appointments for corporation counsel and other officers is mandatory.

The defendant asserts that § C3-3J of the charter does not apply to the appointment of corporation counsel because § C7-3 of the charter does not include a cross-reference to § C3-3J, even though another section of

the charter does contain such a cross-reference. Specifically, the defendant relies on § C7-8 of the Meriden City Charter, which provides that members of the Board of Ethics "shall be appointed in accordance with § C3-3J of the [c]ity [c]harter . . . ." The defendant asserts that if the drafters of the charter intended for § C3-3J to apply to the appointment of corporation counsel, then the drafters would have put a similar cross-reference to § C7-3. We disagree. As we explained previously herein, the plain language of § C3-3J of the Meriden City Charter provides that "[t]he [m]ayor *shall* recommend any and all appointments . . . ." (Emphasis added.) That language eliminates the need for cross-references in other sections of the charter.

The defendant also asserts that interpreting the charter to require the recommendation of the mayor for the appointment of the corporation counsel leads to absurd and unworkable results because it may require the city council to appoint an individual to the position of corporation counsel who they do not approve of and then they could exercise their powers to remove the person from office. Although we agree with the defendant that such a result could occur, we disagree that the result would be absurd. Indeed, the appointment scheme that is detailed in the charter is a rational one that favors cooperation amongst the positions of government, even if they are from different political parties. Just as the city council is required to appoint an individual who is recommended by the mayor, the mayor knows that the city council may remove the corporation counsel. Therefore, both the mayor and the city council are motivated to recommend and appoint a qualified individual for whom there is consensus between the city council and the mayor. Such an approach promotes cooperation between different branches of government and is neither absurd nor unworkable.

The defendant further asserts that interpreting the city charter so as to require the mayor to recommend the candidate for corporation counsel conflicts with § 3-4 of the Meriden City Code (code), which requires the city council to appoint certain officers at the first meeting in December following each biennial election. The defendant claims that applying § C3-3J of the charter to the appointment of corporation counsel conflicts with § 3-4 of the code because, if the city council rejects the first recommendation of the mayor, it would be impossible to appoint the corporation counsel at the first meeting in December. Although it is possible that the corporation counsel may not be appointed in December, § C3-3J of the charter provides for a timely appointment process in the event that the city council rejects the mayor's first recommendation for corporation counsel. Accordingly, we do not find any possible conflict between the workings of § C3-3J of the charter and § 3-4 of the code.[3]

The defendant further asserts that the issue presented in this appeal is ultimately a separation of powers issue and that this court should give great weight to the long-standing practices of one branch of government in which another branch has acquiesced. Specifically, the defendant asserts that in interpreting the charter, this court should be guided by the fact that for twenty years, the city council and previous mayors have interpreted the charter so as to grant the city council the exclusive power to select and appoint corporation counsel. The defendant relies primarily on *National Labor Relations Board* v. *Noel Canning*,     U.S.     , 134 S. Ct. 2550, 189 L. Ed. 2d 538 (2014), to support this claim.

In *Noel Canning*, the United States Supreme Court considered whether, under the recess appointments clause, the president of the United States had the appropriate authority to appoint individuals to the National Labor Relations Board during a three day adjournment of the United States Senate. Id., 2259. The court recognized that the issue implicated the separation of powers doctrine because if the recess appointments clause did not give the president power to appoint the individuals, he would have violated that doctrine by improperly exercising a power he shared with the legislature. Id., 2559–560. Nevertheless, the court first addressed the plain language of the clause, particularly the meaning of the term "recess." Id., 2561. Having determined that the term "recess" was ambiguous as it applied to the Senate's three day adjournment, the court then considered the historical practice and the purpose of the clause to ascertain the meaning of the recess appointments clause. Id., 2561–64. Ultimately, the court concluded that the president did not have the authority to appoint individuals to the National Labor Relations Board during a three day adjournment of the United States Senate. Id., 2565–67.

The defendant claims that, under *Noel Canning*, long-standing government practices can be determinative of the meaning of a charter provision, even when the language of the charter is particularly clear, if the provision at issue implicates the separation of powers doctrine. We disagree. As recently as 2012, we have reaffirmed the well established principle that "with respect to the construction of the provisions in a municipal charter . . . [w]here a charter specifies a mode of appointment, strict compliance is required. . . . [I]f the charter points out a particular way in which any act is to be done or in which an officer is to be elected, then, unless these forms are pursued in the doing of any act or in the electing of the officer, the act or the election is not lawful." (Citations omitted; internal quotation marks omitted.) *Bateson* v. *Weddle*, supra, 306 Conn. 14. We, therefore, decline to accept the defendant's invitation to adopt a different standard of review for cases involving the interpretation of municipal char-

ters that raise issues regarding the separation of powers doctrine, as many claims involving the interpretation of municipal charters do.

In the present case, as we have explained previously herein, the plain language of the § C3-3J of the Meriden City Charter clearly and unambiguously provides that "the [m]ayor shall recommend any and all appointments to officers or positions within the appointing power of the [c]ity [c]ouncil . . . ." Therefore, any resort to extratextual evidence in the present case, including the longstanding practice of the mayor and the city council, is not necessary. Accordingly, we find the defendant's reliance on *Noel Canning* unavailing.

We conclude that the trial court properly determined that the charter requires the recommendation of the mayor for the appointment of the city's corporation counsel. Accordingly, on the basis of these undisputed facts, we affirm the judgment of the trial court granting the writ of quo warranto filed by the plaintiffs and ordering the defendant's removal from the office of corporation counsel.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The original plaintiffs in the present case were Lois DeMayo and John Biafore. Joseph Carabetta intervened as a plaintiff in this action on February 24, 2014.

[2] The defendant raises a second claim that the trial court misinterpreted the parties' stipulation of facts regarding whether the prior mayor recommended the defendant for the position. Because we conclude that the charter required the recommendation of the current mayor prior to appointing the defendant to the position of corporation counsel, we need not reach the second issue.

[3] The defendant further asserts that if we conclude that § C3-3J of the charter applies to the appointment of corporation counsel, then it would apply to the appointment of the city manager and that such an application would lead to absurd and unworkable results and be contrary to law. Because the process by which the position of city manager is appointed under the charter is contained in a separate section of the charter that uses different language than § C7-3, we decline to accept the defendant's invitation to remark on that process.