RED 11, LLC *v.* CONSERVATION COMMISSION OF
THE TOWN OF FAIRFIELD ET AL.
(AC 29092)

DiPentima, Gruendel and Lavery, Js.

Argued March 18—officially released October 20, 2009

*J. Christopher Rooney*, with whom was *Anne D. Peterson*, for the appellant (plaintiff).

*Noel R. Newman*, with whom, on the brief, was *Annmarie P. Briones*, for the appellees (named defendant et al.).

*Patricia A. Horgan*, assistant attorney general, for the appellee (commissioner of environmental protection, defendant in the first and second appeals).

*Thomas J. Donlon*, with whom was *Edward V. O'Hanlan*, for the appellee (Wilmington Trust Company, defendant in the first and second appeals, intervenor in the third appeal).

*Opinion*

DiPENTIMA, J. In this case, we address the limitations of the statutory farming exemption to town inland wetlands regulations. The plaintiff, Red 11, LLC, doing business as Twin Oak Farms, appeals from the judgments of the trial court dismissing the administrative appeals from the decisions of the named defendant, the conservation commission of the town of Fairfield (commission),[1] to uphold three cease and desist orders. On appeal, the plaintiff claims that the court improperly (1) dismissed its appeals because the commission lacked jurisdiction to uphold the cease and desist orders, (2) dismissed the appeals because it misinterpreted the statutory limitations on the farming exemption contained in General Statutes § 22a-40 (a) (1) and (3) determined that there was sufficient evidence to

---

[1] Marisa Anastasio, a wetlands compliance officer for the town of Fairfield, also was named as a defendant in all three of the plaintiff's appeals. The commissioner of environmental protection was a defendant in the first and second appeals only.

support the commission's decisions upholding the issuance of the cease and desist orders. We disagree and, accordingly, affirm the judgments of the trial court.

The following factual and procedural history provides the background for understanding the claims raised on appeal. On May 11, 2001, Salvatore K. DiNardo obtained an eighteen acre parcel of land located at 1159 Redding Road in Fairfield. DiNardo then conveyed title to the plaintiff, a limited liability company of which DiNardo is the managing member and principal. The property contains three distinct wetlands and watercourse areas: the Redding Road area, the vernal pool and the Rider's Lane area. In September, 2001, Edward Jones, a wetlands compliance officer, issued a cease and desist order advising DiNardo to stop activities on the property that were impacting wetlands and watercourses.

The commission held a show cause violation hearing on September 20, 2001, at which DiNardo stated that he intended to create a farm on the property. Pursuant to § 22a-40 (a) (1) and § 4.1.a of the Fairfield inland wetlands and watercourses regulations (Fairfield regulations),[2] farming activities in wetlands and watercourses are permitted expressly as of right. The

[2] General Statutes § 22a-40 (a) provides in relevant part: "The following operations and uses shall be permitted in wetlands and watercourses, as of right:

"(1) Grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming operation, and activities conducted by, or under the authority of, the Department of Environmental Protection for the purposes of wetland or watercourse restoration or enhancement or mosquito control. The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, filling or reclamation of wetlands or watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale . . . ." The language of § 4.1.a of the Fairfield regulations essentially tracks the language of § 22a-40 (a).

commission continued the matter for one month to afford DiNardo time to submit a plan of his proposed activities pursuant to § 4.4 of the Fairfield regulations.[3]

The matter returned to the commission on October 18, 2001. Raymond Rizio, an attorney, appeared on behalf of the plaintiff and DiNardo. Rizio emphasized that the property would be used as a farm. He further represented that although he did not agree that the commission had the authority to condition such requirements, the plaintiff would install silt fencing and mulch around the disturbed areas to stabilize the land. Rizio further stated that if the plaintiff decided to pursue installation of a culvert and weir, it would return at a future date to seek approval from the commission. Rizio also agreed that, upon notice, the plaintiff would make the property available for inspection.

The commission issued a declaratory ruling that "the proposed farming activities, as set forth in the plan submitted by . . . DiNardo, excluding those areas where a culvert and weir are to be installed, were allowed as of right, and did not require a wetland permit, and the vernal pool cannot be filled in." The commission also removed the cease and desist order with "the request that the property owner honor the stipulations

[3] Section 4.4 of the Fairfield regulations provides: "To carry out the purposes of this section, any person proposing to carry out a permitted or nonregulated operation or use of wetland or watercourse, that may disturb the natural and indigenous character of the wetland or watercourse, shall, prior to commencement of such operation or use, notify the [commission] on a form provided by it, and provide the [commission] with sufficient information to enable it to properly determine that the proposed operation and use is a permitted or nonregulated use of the wetland or watercourse. The [commission] or its designated agent shall rule that the proposed operation or use is a permitted or a nonregulated use or operation or that a permit is not required. Such ruling shall be in writing and shall be made no later than the next regularly scheduled meeting of the [commission] following the meeting at which the request was received. The designated agent for the [commission] may make such ruling on behalf of the [commission] at any time."

made this evening, including the stipulation whereby he agreed to install silt fencing to stabilize the area." On October 22, 2001, the commission sent a letter to DiNardo detailing the terms of its decision.

By a letter dated July 2, 2003, Marisa Anastasio, a wetlands compliance officer, issued another cease and desist order to the plaintiff. This letter acknowledged the October, 2001 declaratory ruling but alleged that the plaintiff had engaged in filling, piping, draining and excavating regulated wetlands and watercourses without a permit in violation of various sections of the Fairfield regulations. It also alleged that the plaintiff's representatives had denied access to the property[4] so that observations of the property had been undertaken from adjacent properties and by helicopter surveillance.

The commission held a hearing on August 7, 2003. Following Anastasio's presentation, representatives for the plaintiff countered that the actions were permissible as farming activity. The commission found that the violations on the site, such as filling, draining and piping of regulated wetlands and watercourses, had and continue to have a significant and adverse impact on regulated wetlands and watercourses on and off the property. Accordingly, the commission sustained the cease and desist order dated July 2, 2003.

The plaintiff filed an appeal to the Superior Court, arguing that the commission improperly sustained the cease and desist order. The plaintiff also argued that the commission violated its right to due process by denying it the ability to rebut the evidence and legal argument presented by the intervenors, Wilmington Trust Company (Wilmington) and James Caserta and Diane Caserta.[5] On December 15, 2003, the court

---

[4] Anastasio stated that she visited the site in August, 2002, and had been denied access.

[5] Wilmington is also a defendant in two of the appeals.

ordered the matter remanded to the commission to allow the plaintiff the opportunity to present rebuttal evidence. The commission opened the rebuttal hearing on March 4, 2004, and continued the matter until March 25, 2004. The commission modified its earlier findings with respect to a perimeter stone wall, but otherwise continued the existing cease and desist order on March 29, 2004. The plaintiff then filed a second appeal to the Superior Court claiming that the commission acted arbitrarily, capriciously, unlawfully and in abuse of its discretion by sustaining the March 29, 2004 cease and desist order.

Anastasio issued a third cease and desist letter, dated June 16, 2004, as a result of violations "existing on [the plaintiff's] property above and beyond those violations listed in the [March 29, 2004 cease and desist order]." Specifically, the letter alleged that the following activities had occurred on the plaintiff's property: (1) the use of wetlands soil for grading along the western part of the property; (2) the filling and grading of wetlands on the western part of the property; (3) excavation of wetland soil for the creation of a ditch through the Redding Road areas, resulting in additional drainage and diversion of water into the storm sewer pipe system; (4) discharge of silted water and mud as a result of the failure to install sedimentation and erosion controls; (5) the removal of additional vegetation; (6) grading throughout the property using wetlands soils; and (7) earth moving of large wetlands soil stockpile near the Redding Road areas. This letter further indicated that on May 6, 2004, the plaintiff had agreed to submit a performance bond and confirm an environmental site monitor and that these obligations had not been met.

After a hearing, the commission adopted the proposed findings of fact set forth in Anastasio's letter, added certain requirements to the proposed corrective measures and affirmed the violations as listed in the

June 16, 2004 letter. The plaintiff filed a third appeal to the Superior Court, again arguing that the commission acted arbitrarily, capriciously, unlawfully and in an abuse of its discretion in issuing the July 2, 2004 cease and desist order.

The court consolidated the three appeals and issued three memoranda of decision on April 4, 2007, dismissing the plaintiff's appeals. With respect to the first two appeals, stemming from the July, 2003 and March, 2004 cease and desist orders, the court determined that the record supported the conclusion that regulated activities, such as the filling, draining and piping of the wetlands and watercourses had occurred on the property without a required permit. The court further concluded that these activities did not fall within the farming exception set forth in § 22a-40 and § 4.1 of the Fairfield regulations. As to the July, 2004 cease and desist order, the court stated that the record supported the commission's determination that regulated activities, "such as earth moving, excavating, filling, grading, draining and vegetation removal had occurred on the property despite the imposition of the March 29, 2004 cease and desist order. In addition, the record evidence indicates that ongoing work continued on the property during May and June, 2004, and [that] no site monitor confirmation or performance bond had been submitted, despite the representation made at the May 6, 2004 site visit." The plaintiff then filed a petition to appeal to this court, which was granted on July 27, 2007.[6]

[6] Two days before oral argument in this matter, this court received a letter from Wilmington referring to Practice Book § 67-10, citing and discussing several authorities not mentioned in its brief. The plaintiff filed a letter objecting to Wilmington's submission as noncompliant with § 67-10. We take this opportunity to remind counsel of the purpose behind that rule. As noted in the official 2009 commentary to the rule, that purpose is to bring to the court's attention "significant authority that was genuinely unknown to the party at the time of the preparation of the brief or at oral argument." Practice Book § 67-10, commentary. It is not an opportunity to file a supplemental brief.

I

The plaintiff first claims that the court improperly dismissed its appeals because the commission lacked jurisdiction to uphold the cease and desist orders. Specifically, it argues that because the commission issued a declaratory ruling in October, 2001, the plaintiff's proposed farming activities were exempt from regulation under the Inland Wetlands and Watercourses Act (act); General Statutes §§ 22a-36 through 22a-45; and therefore outside the jurisdiction of the commission. We are not persuaded by the plaintiff's jurisdictional argument.

At the outset, we identify the proper standard of review. "Whether the trial court properly concluded that the commission had jurisdiction over the activities proposed by the plaintiff involves a legal question involving statutory interpretation, over which our review is plenary." *AvalonBay Communities, Inc.* v. *Inland Wetlands Commission*, 266 Conn. 150, 158–59, 832 A.2d 1 (2003).

The purpose of the act "is contained in General Statutes §§ 22a-36 through 22a-45, inclusive. . . . Under [General Statutes] §§ 22a-42 and 22a-42a, any municipality, acting through its legislative body, may authorize or create a board or commission to regulate activities affecting the wetlands and watercourses located within its territorial limits and any such board or commission is authorized to grant, deny or limit any permit for a regulated activity." *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 249–50, 470 A.2d 1214 (1984). "[W]e are mindful that the [act] rests upon a specific legislative finding that [t]he inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed, and that [t]he preservation and protection of

the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. General Statutes § 22a-36. Accordingly, the broad legislative objectives underlying the [act] are in part to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution . . . [and by] protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment [and for the benefit and enjoyment] of generations yet unborn. General Statutes § 22a-36. . . . In order to accomplish these objectives, it is the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts. General Statutes § 22a-42 (a)." (Internal quotation marks omitted.) *Queach Corp* v. *Inland Wetlands Commission*, 258 Conn. 178, 193–94, 779 A.2d 134 (2001); see also *Mario* v. *Fairfield*, 217 Conn. 164, 168, 585 A.2d 87 (1991). Our Supreme Court has described the purpose underlying the act as remedial. *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 297–98, 933 A.2d 256 (2007); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 11:1, p. 331 ("[t]he net effect . . . has been that the wetlands statutes have been liberally construed").

We now turn to the text of the relevant statutes. General Statutes § 22a-32 provides in relevant part that

"[n]o regulated activity shall be conducted upon any wetland without a permit. . . ." Section 22a-40 sets forth certain exceptions from § 22a-32. Specifically, it provides in relevant part: *"The following operations and uses shall be permitted in wetlands and watercourses, as of right: (1) Grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming . . . ."* (Emphasis added.) General Statutes § 22a-40 (a); see also R. Fuller, supra, § 11:4, pp. 336–37.

Our Supreme Court expressly has indicated that exceptions to statutes are to be strictly construed and that those who claim the benefit of such exceptions have the burden of proving that they come within the limited class for whose benefit it was established. *Conservation Commission* v. *Price,* 193 Conn. 414, 424, 479 A.2d 187 (1984); see also R. Fuller, supra, § 11:4, p. 337. We are mindful, however, that the exemptions from wetlands regulations contained in § 22a-40 (a) cannot be interpreted in such a manner that would render them meaningless. See *Knapp* v. *Inland Wetlands Commission,* 7 Conn. App. 283, 285, 508 A.2d 804 (determination that exemption permitting construction of residence did not include right to construct septic system was improper), cert. denied, 200 Conn. 807, 512 A.2d 230 (1986).

The General Assembly has established certain limitations of the farming exemption. "The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, filling or reclamation of wetlands or watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses or the purposes of sale . . . ." General Statutes § 22a-40 (a) (1). Our

Supreme Court has observed, with respect to the residential housing exemption from wetlands regulation, "a clear trend in the legislature's treatment of wetlands regulation: the inclusion of properties within the regulatory scheme by the narrowing of blanket exemptions from regulatory oversight." *Paupack Development Corp.* v. *Conservation Commission,* 229 Conn. 247, 251, 640 A.2d 70 (1994).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Buttermilk Farms, LLC* v. *Planning & Zoning Commission,* 292 Conn. 317, 328, 973 A.2d 64 (2009); see also *Unistar Properties, LLC* v. *Conservation & Inland Wetlands Commission,* 293 Conn. 93, 105–106, 977 A.2d 127 (2009). Guided by these principles, we now address the plaintiff's specific claim that once the commission determined in 2001 that the proposed farming activities were considered as of right uses of the wetlands, it lacked any further jurisdiction over the property.

The following additional facts are necessary for our discussion. The commission held a show cause violation hearing on October 18, 2001. At that hearing, Rizio,

the plaintiff's representative, agreed to install silt fencing around the disturbed area and to provide access to the property to staff members of the commission. Philip Meiman, a member of the commission, inquired whether the vernal pool would remain or be replaced with a wetlands nursery. Rizio responded that the plaintiff had the right to put in a wetlands nursery. Another member of the commission, Frank Rice, indicated that he believed that the vernal pool could not be filled in and that the vernal pool needed to remain as such. Finally, a discussion between two members of the commission, Chairman Charles Jankovsky and Gary Weddle, revealed that they believed that the vernal pool could not be filled in. Notably, there was no discussion regarding filling or reclamation of wetlands or watercourses.

In *Wilkinson* v. *Inland Wetlands & Watercourses Commission*, 24 Conn. App. 163, 167, 586 A.2d 631 (1991), we stated that an inland wetlands and watercourses commission "must be given the first opportunity to determine its jurisdiction." See also *Canterbury* v. *Deojay*, 114 Conn. App. 695, 708, 971 A.2d 70 (2009) (whether planting of blueberry bushes is considered farming pursuant to § 22a-40 must first be determined by local commission). In the present case, the commission determined in 2001 that the plaintiff had established that it would engage in farming activities that did not require a permit pursuant to § 22a-40 (a) (1). This declaratory ruling, however, did not serve to deprive the commission of jurisdiction for all matters with respect to this property. The July 2, 2003 letter from Anastasio alleged, inter alia, that the plaintiff engaged in reclamation of the vernal pool, caused sedimentation of off-site wetlands and watercourses, installed a storm sewer system, caused the discharge of polluted water from the storm sewer system, and filled and drained the Redding Road and Rider's Lane areas. These topics

were not part of the 2001 proceedings or the declaratory ruling issued by the commission. Simply put, the violations alleged in the Anastasio letter in July, 2003, had not been considered or decided by the commission in October, 2001. Therefore, the plaintiff's argument that following the issuance of the 2001 declaratory ruling the commission lacked jurisdiction over the subsequent activities on the property is without merit.

II

The plaintiff next argues that the court improperly dismissed its appeals because it misinterpreted the statutory limitations on the farming exemption contained in § 22a-40 (a) (1). Specifically, it argues that the filling or reclamation[7] limitation to the farming exemption applies only to wetlands and watercourses with continual flow and therefore is not applicable to the plaintiff's property. We are not persuaded.

At the outset, we note that the plaintiff and Wilmington disagree as to the proper standard of review. The plaintiff, relying on *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 116, 830 A.2d 1121 (2003), argues that a broader standard should be applied because at issue is the interpretation of § 22a-40 (a) (1). Wilmington counters that the issue is the application of § 22a-40 (a) (1) to the facts of the present case and therefore a more deferential standard should be utilized. We agree with the plaintiff.

Generally, we review the actions of an agency under a deferential standard of review. Specifically, we consider whether, in light of the evidence, the agency acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *King's Highway Associates* v. *Planning & Zoning Commission*, 114 Conn. App. 509, 514, 969 A.2d

[7] "Reclamation" has been defined as "[m]aking land fit for cultivation, as by draining swamps . . . or irrigating arid land." Ballentine's Law Dictionary (3d Ed. 1969); see also Webster's Third New International Dictionary ("the act or process of restoring to cultivation").

841 (2009). The construction of a statute, however, presents a question of law for a reviewing court. *North Haven* v. *Planning & Zoning Commission*, 220 Conn. 556, 561, 600 A.2d 1004 (1991). Accordingly, we employ the broader plenary standard of review. *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 413, 908 A.2d 1033 (2006). Last, we note that "[i]t is for the courts, not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *King's Highway Associates* v. *Planning & Zoning Commission*, supra, 514.

At issue in the present case is whether the limitation to the farming exemption prohibiting the filling or reclamation applies to all wetlands or those wetlands with continual flow. We conclude that this claim presents a question of pure law, and therefore the broader standard of review applies. Accordingly, we apply the plenary standard of review. See *Mailhot* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 62, 64, 733 A.2d 304 (1999). We are mindful, however, that "[o]ne claiming the benefit of an exception under a statute has the burden of proving that he comes within the limited class for whose benefit it was established. . . . Exemptions are to be strictly construed." (Citation omitted.) *Aaron* v. *Conservation Commission*, 183 Conn. 532, 549, 441 A.2d 30 (1981); see also *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 473–74, 673 A.2d 484 (1996); *Conservation Commission* v. *Price*, supra, 193 Conn. 424.

As we previously stated, when construing a statute, our fundamental objective is to ascertain and give effect to the intent of the legislature. See *Buttermilk Farms, LLC* v. *Planning & Zoning Commission*, supra, 292 Conn. 328. Pursuant to § 1-2z, we begin with the text of the statute. See *Aspetuck Valley Country Club, Inc.* v. *Weston*, 292 Conn. 817, 824, 975 A.2d 1241 (2009). Section 22a-32 provides that no regulated activity shall

be conducted upon any wetland without a permit. General Statutes § 22a-38 (13) defines " '[r]egulated activity' " as "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, *but shall not include the specified activities in section 22a-40 . . . .*" (Emphasis added.) As we previously noted, § 22a-40 (a) (1) permits farming activities as of right in wetlands and watercourses. The statute, however, also places limits on this farming exemption and does not allow, inter alia, for the "filling or reclamation of wetlands or watercourses with continual flow . . . ." General Statutes § 22a-40 (a) (1). The plaintiff argues that the phrase "with continual flow" applies to both wetlands and watercourses.[8] Accordingly, it maintains that it was entitled to conduct filling or reclamation of the Redding Road and Rider's Lane areas.

"Generally, courts presume that 'or' is used in a statute disjunctively unless there is clear legislative intent to the contrary." 1A J. Sutherland, Statutory Construction (6th Ed. Singer 2002) § 21:14; cf. *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 170, 455 A.2d 833 (1983). Our Supreme Court has stated that "[w]hen a list is joined by the disjunctive 'or,' as this one is, common usage strongly suggests that each item in the list be read to be separated by 'or,' not 'and.' "

---

[8] The terms "wetlands" and "watercourses" are defined in the act. "General Statutes § 22a-38 (15) defines wetlands as *land,* including submerged land . . . which consists of any of the *soil types* designated as poorly drained, very poorly drained, alluvial, and floodplain . . . . Watercourses are defined as rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs, and all other *bodies of water,* natural or artificial, vernal or intermittent, public or private, which are contained within, flow through or border upon this state or any portion thereof . . . . General Statutes § 22a-38 (16). We note that these pivotal definitions, which apply throughout the act, are narrowly drawn and limited to physical characteristics." (Emphasis in original; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Inland Wetlands Commission,* supra, 266 Conn. 162–63.

*Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 737, 873 A.2d 898 (2005). Given the clear legislative intent, as set forth in § 22a-36, of protecting wetlands and the instruction from our Supreme Court that exceptions from statutes are to be strictly construed; see *Conservation Commission* v. *Price*, supra, 193 Conn. 424; we are not persuaded that we should construe the word "or" to mean "and" with respect to § 22a-40 (a) (1). We also note that the act, on numerous occasions, uses the language "wetlands *and* watercourses," further indicating the legislature's intent of using "or" in the disjunctive. (Emphasis added.)

Additionally, in *Ruotolo* v. *Inland Wetlands Agency*, 18 Conn. App. 440, 558 A.2d 1021, cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989), this court discussed the question of whether the phrase "with continual flow" applies to both wetlands and watercourses. In *Ruotolo*, the plaintiff sought to create a farm pond and a nursery partially situated in wetlands. Id., 441. A dispute between the plaintiff and the local wetlands agency ensued, and the plaintiff appealed to the Superior Court. Id., 446. The court determined that the local agency's actions were void ab initio because it had lacked jurisdiction. Id., 446–47. This court reversed the Superior Court's conclusion regarding the local agency's jurisdiction. Id., 449.

In *Ruotolo*, we noted that after remand it would have to be determined "[w]hether the plaintiff is permitted to carry on his activities as he has apparently planned to do . . . ." Id., 450. The plaintiff's application indicated that he sought to reclaim wetlands, which required a permit, and to relocate a watercourse, *"which may also require a permit, depending upon whether it is a watercourse with continual flow."* (Emphasis added.) Id. It is clear, therefore, that we previously have read the "with continual flow" language

of § 22a-40 (a) to apply only to watercourses and not to wetlands. See also *Esposito* v. *Inland Wetlands Commission*, Superior Court, judicial district of New Haven, Docket Nos. CV-99-0427367-S, CV-99-0431238-S, CV-99-0431720-S (July 17, 2000) (27 Conn. L. Rptr. 537).[9] We conclude, therefore, that the court properly interpreted § 22a-40 (a) (1).

## III

The plaintiff next argues that the court improperly determined that there was sufficient evidence to support the commission's decisions upholding the issuance of the cease and desist orders. Specifically, it claims that, with respect to the Rider's Lane, Redding Road and vernal pool areas, there was insufficient evidence to support the cease and desist orders. We disagree.

"We begin with a review of the well established parameters of the substantial evidence test. It is widely accepted that, [i]n reviewing an inland wetlands agency decision made pursuant to [its regulations], the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the

---

[9] The plaintiff argues that the discussion of continual flow in *Ruotolo* constitutes nothing more than dicta, which is not binding. We disagree. "Dictum includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . As we have previously recognized, however, *it is not dictum when a court of [appeal] intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy* . . . . Rather, such action constitutes an act of the court which it will thereafter recognize as a binding decision." (Citations omitted; emphasis added; internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 435, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999).

province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 70, 848 A.2d 395 (2004); see also *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 38, 959 A.2d 569 (2008).

We further note that "[t]he party challenging the agency decision has the burden to show that substantial evidence does not exist in the record as a whole to support the agency's decision." (Internal quotation marks omitted.) *Fanotto* v. *Inland Wetlands Commission*, 108 Conn. App. 235, 239, 947 A.2d 422 (2008), appeal dismissed 293 Conn. 745, 980 A.2d 296 (2009). In the context of the present case, the plaintiff bears the burden of showing that its activities fell within the ambit of the farming exemption. See *Conservation Commission* v. *Price*, supra, 193 Conn. 424; *Aaron* v. *Conservation Commission*, supra, 183 Conn. 549.

At the August 7, 2003 show cause violation hearing, Anastasio began by stating that "[s]ignificant and adverse alterations have taken place to wetlands and watercourses on this site." She also mentioned that she and her staff had been denied access to the site and, as a result, the documentation of violations had occurred

from off-site observations. As to the Rider's Lane wetlands, Anastasio presented photographs showing that it had been filled in completely, likely with off-site soil. James Caserta and Diane Caserta stated that they had observed the soil from the Rider's Lane wetlands being excavated. Michael Klein, a soil scientist, noted that the Rider's Lane wetlands "are gone." Following an August 12, 2003 site visit, Anastasio again concluded that the Rider's Lane wetlands had been filled completely and cited truck tracks and soil piles as evidence. Given that the farming exemption does not allow for the reclamation of wetlands, we conclude that there was substantial evidence in the record to support the commission's decision to uphold the cease and desist order with respect to the Rider's Lane area.

We also agree that the cease and desist order as to the Redding Road wetlands also was supported by substantial evidence. At the August 7, 2003 hearing, Anastasio informed the commission that this area had been drained using a storm sewer system of pipe, plastic lining and concrete manholes and then filled with soil. James Caserta and Diane Caserta stated that muddy water that had been pumped from the plaintiff's property ran into their pond. The evidence revealed that the dark, rich organic soil that had been present was replaced by "hardpan soil." The plaintiff's activities constituted regulated activities in a wetlands and required a permit. Accordingly, the commission's decision to uphold the cease and desist order was supported by substantial evidence.[10]

---

[10] The plaintiff argues that the Redding Road area was both a wetlands *and* a watercourse. It maintains that because there was no evidence of continual flow, the farming exemption applied. This argument is unavailing because the plaintiff acknowledges the Redding Road area to be a wetland. Accordingly, the filling of this area requires a permit, as the filling of a wetland is not part of the farming exemption. See General Statutes § 22a-40 (a) (1). The Redding Road area's possible classification as a watercourse does not change this analysis.

Last, we turn to the vernal pool. During the August 7, 2003 hearing, Anastasio stated that the vernal pool had been drained via a trench dug from the pool to the Redding Road area. Following her discussion with DiNardo, when Anastasio indicated that such action could be considered the reclamation of a wetland, the trench was dammed and the vernal pool excavated and expanded in both size and depth to create the farm pond. Anastasio provided photographs in support of her statements regarding the conversion of the vernal pool to the farm pond. At the March 25, 2004 show cause violation hearing, Anastasio indicated that changes to the vernal pool were the result of a planned course of action. She also noted that, as a result of the increased dimensions of the farm pond, its biological function had been changed significantly.

The plaintiff argues that § 22a-40 (a) (1) specifically provides that a farm pond of three acres or less is permitted as of right. It ignores, however, the language requiring that such farm ponds must be "essential to the farming operation . . . ." General Statutes § 22a-40 (a) (1). The plaintiff bore the burden of establishing its entitlement to the farming exemption, specifically, that the farm pond of three acres or less was essential to the farming operation. The commission did not make such a determination. See *Canterbury* v. *Deojay*, supra, 114 Conn. App. 709–10. Robert Sonnichsen, a professional engineer, opined that irrigation water "was going to be critical" to the farming operations. He did not indicate, however, that the replacement of the vernal pool with the farm pond was *essential* to the operation, merely that irrigation would be needed. In other words, there was no evidence that water from another source could not have been used rather than converting the vernal pool. Additionally, the commission was free to reject Sonnichsen's testimony. See *Pelliccione* v. *Planning & Zoning Commission*, 64 Conn. App. 320, 331,

780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001)

A farm pond falls within the § 22a-40 (a) (1) exemption only if the commission made the determination that it was essential to the farming activity. The commission did not make that determination. Accordingly, the plaintiff failed to sustain its burden of establishing that its activities fell within the ambit of § 22a-40 (a) (1). As a result, the transformation of the vernal pool to the farm pond required a permit. The commission's decision to uphold the cease and desist orders, therefore, was proper.

The judgments are affirmed.

In this opinion the other judges concurred.