******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THE INDIAN SPRING LAND COMPANY *v.* INLAND
WETLANDS AND WATERCOURSES AGENCY
OF THE TOWN OF GREENWICH ET AL.
(SC 19591)

Palmer, Zarella, McDonald, Espinosa, Robinson and Vertefeuille, Js.

*Argued April 7—officially released July 5, 2016*

*James R. Fogarty*, for the appellant (plaintiff).

*John K. Wetmore*, for the appellee (named
defendant).

*Marjorie Shansky*, for the appellees (intervenor Sidney E. Goodfriend et al.).

*Phillip Russell* filed a brief for the appellee (intervenor Ellen C. Weld).

*Opinion*

ESPINOSA, J. In this appeal we must determine whether the construction of roads directly related to farming operations is a permitted activity, as of right, under General Statutes § 22a-40 (a) (1)[1] and, therefore, not subject to the jurisdiction of municipal inland wetlands agencies. The plaintiff, The Indian Spring Land Company, appeals from the trial court's judgment dismissing its appeal from the decision of the defendant Inland Wetlands and Watercourses Agency of the Town of Greenwich (agency)[2] granting the plaintiff's application to construct a gravel access road subject to certain conditions. Upon review of § 22a-40 (a) (1), we conclude that road construction directly related to farming operations is permitted as of right under the Inland Wetlands and Watercourses Act; General Statutes § 22a-36 et seq.; and, therefore, that the agency did not have jurisdiction to regulate the construction of the plaintiff's access road. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff is the owner of an unimproved tract of land consisting of approximately 121.5 acres located in a residential section of the town of Greenwich (town). Since acquiring it in 1912, the plaintiff has largely maintained the property as forest land, and, from at least 1975 to the present, the State Forester has designated the property as forest land within the meaning of General Statutes § 12-107a et seq. (providing, inter alia, for classification of land as forest land for property tax assessment purposes). The northeast compartment of the property, consisting of approximately 70.85 acres (northeast compartment), is the subject of the present appeal. The interior of the northeast compartment is essentially landlocked by surrounding public roads and private property and only accessible via a narrow strip of the plaintiff's property on Zaccheus Mead Lane.

In late 2011, the plaintiff retained a certified forester, Starling Childs of Ecological and Environmental Consulting Services, Inc. (consultant), to perform a survey of the northeast compartment and develop a forest and land management plan in order to institute targeted and systematic forest management practices. The consultant prepared a management plan, dated November 18, 2011 (management plan), which contained the following information about the northeast compartment. The northeast compartment consists of mixed hardwood forest[3] typical of a southern Connecticut coastal forest ecosystem. Although the forest is of mixed age overall, many of the canopy trees present are between 80 and 100 years old and other trees growing in the area are between 40 and 60 years old. Numerous unused paths and former farm pastures are located in the northeast compartment, many of which have been colonized and overgrown by various invasive shrubs and vines[4] over

the preceding thirty years. Several wetlands areas and small ponds are located within the northeast compartment. In 2010, a strong storm uprooted and damaged a significant number of trees in the northeast compartment and the resulting deadfall and broken limbs still litter the area.

The management plan recommended that the plaintiff periodically use mechanized forestry mowers, chainsaws, and brush cutters, in addition to the application of herbicides and targeted propane torches, in order to remove the pervasive invasive species on the property and ensure the unimpeded health of native tree species. The management plan also acknowledged that removing the invasive shrubs and vines would eliminate a major habitat for the black-legged deer tick (Ixodes scapularis), which serves as a vector for Lyme disease. The management plan further recommended that the plaintiff bring a high horsepower logging tractor onto the property in order to clear out the excess fallen trees and limbs so as to reduce the risk of forest fires during dry spells and provide more room for growth of the forest understory. As a means of accessing the northeast compartment, the management plan recommended that the plaintiff construct a gravel access road from the strip of its property accessed by Zaccheus Mead Lane.

On January 18, 2012, the plaintiff submitted an application, modified on various dates thereafter, to the agency seeking permission to perform invasive species mitigation and other forest management work and to construct a gravel access road leading from Zaccheus Mead Lane into the interior of the northeast compartment. The proposed route of the access road crossed a small wetland measuring approximately 5684 square feet, or 0.13 acres. In its application, the plaintiff proposed constructing a 17.5 foot concrete bridge that would span the wetland, yet leave the underlying wetland itself undisturbed. The agency considered the plaintiff's application at a public meeting on February 27, 2012, and ultimately concluded that it required additional information from the plaintiff in order to arrive at a decision. Several landowners with property abutting the northeast compartment—Sidney E. Goodfriend, Tina Jones, George J. Henry, and Ellen C. Weld (collectively intervenors)—attended the agency meeting and expressed initial concerns regarding the plaintiff's proposal.[5]

On March 16, 2012, the plaintiff, through its consultant, responded to the agency's request for additional information on the proposed access road. The plaintiff's response analyzed the other possible means of ingress into the northeast compartment and ultimately concluded that the proposed point of access via the portion of its property on Zaccheus Mead Lane was the most prudent and feasible of the potential alternatives. Jones, Henry, and Weld filed a verified petition to intervene

with the agency on March 20, 2012. Two days later, the plaintiff filed an additional report with the agency that outlined two alternative ways in which the bridge could cross the wetland located on the proposed route of the access road.

On April 25, 2012, the agency directed Robert Clausi, the town's senior wetlands analyst, to conduct an on-site investigation and field study of the wetland to be affected by the plaintiff's proposal. Following his investigation, Clausi submitted a report to the agency on April 26, 2012, that recommended that the agency issue a letter of permission to the plaintiff pursuant to the agricultural exemption in § 22a-40 (a) (1). The next day Goodfriend submitted to the agency his verified petition to intervene.

On May 29, 2012, as to the plaintiff's proposed forestry operations, the agency issued a letter of permission to the plaintiff, finding that those operations were permitted as of right and not subject to the regulatory oversight of the agency. On the same day, however, as to the plaintiff's proposed construction of the gravel access road, the agency issued a permit with special conditions to the plaintiff, finding that the proposed construction was a regulated activity that must be conducted within the parameters set by the agency in the permit (permit). The special conditions attached to the permit significantly differed from the initial proposals that the plaintiff had made to the agency in its application. Most notably, rather than the 17.5 foot concrete bridge originally proposed by the plaintiff, the agency required that the wetland be crossed using a twenty-five foot removable steel bridge. The conditions attached to the permit gave the agency final authority over the plaintiff's final road construction design and required the plaintiff to remove the steel bridge from the northeast compartment after "each [six to eight] week harvest season."

On June 11, 2012, the plaintiff appealed the agency's decision to the Superior Court pursuant to General Statutes § 22a-43, primarily arguing that its road construction activities are directly related to its farming operations and are therefore permitted as of right under § 22a-40 (a) (1). Over the next several months, the intervenors filed motions to intervene in the trial court pursuant to General Statutes (Rev. to 2011) § 22a-19 (a),[6] and also filed their own separate appeals from the agency's decision. On September 24, 2012, the trial court granted the plaintiff's motion to consolidate its own action with the intervenors' separate appeals. The trial court heard argument in the consolidated action on March 22, 2013.

On July 19, 2013, the trial court issued a memorandum of decision, finding that the agency had the necessary jurisdiction to attach special conditions to the plaintiff's permit. The trial court also determined that road construction is not exempt from the regulatory oversight

of municipal wetlands agencies under § 22a-40 (a) (1) and that the agency could therefore regulate the construction of the plaintiff's gravel access road in the northeast compartment. Concluding that it would be improper for it to determine whether the special conditions set forth in the permit were supported by evidence in the record, the trial court remanded the matter to the agency to reexamine the conditions in light of the record before it.

Pursuant to the trial court's remand order, the agency held a hearing on November 25, 2013, in order to reexamine the special conditions attached to the plaintiff's permit. In reviewing the record before it, the agency determined that the plaintiff's proposed gravel road spanned several vernal pools[7] where various scientists had observed "vigorous" frog and salamander activity. The agency also determined that the record before it demonstrated that permanent structures spanning the wetlands could result in changes to the hydrology and temperature of the wetlands that could adversely affect their ecology and viability as amphibian breeding sites. Accordingly, the agency determined that the record contained substantial evidence supporting the special conditions affixed to the plaintiff's permit.

Following a status conference on the remand in the trial court, the agency held an additional meeting on April 28, 2014, in which it further discussed the information on the record and voted in favor of imposing the special conditions. The plaintiff thereafter challenged the agency's actions on remand, arguing to the trial court that the record did not contain substantial evidence supporting the special conditions, particularly the special condition requiring that the steel bridge be periodically removed. On November 12, 2014, the trial court issued a memorandum of decision concluding that there was sufficient evidence in the record for the agency to conclude that the special conditions were necessary. The trial court observed that in order to find for the plaintiff, the court would be required to exercise its own discretion in place of the agency and evaluate the evidence in the record. Accordingly, the trial court rendered judgment dismissing the plaintiff's appeal. The plaintiff appealed the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The dispositive issue before this court is whether the phrase "road construction or the erection of buildings not directly related to the farming operation" in § 22a-40 (a) (1) properly subjects all road construction to the regulatory oversight of municipal wetlands agencies or whether road construction directly related to farming operations is permitted as of right and does not therefore require the approval of a wetlands agency. The plaintiff argues that the construction of its gravel access

road is directly related to its farming operation and that the trial court therefore improperly interpreted § 22a-40 (a) (1) by reading the word "or" in the phrase "road construction or the erection of buildings" in a disjunctive manner. The agency and the intervenors counter that the trial court properly construed the statute, and that its plain meaning provides the agency with jurisdiction to regulate the plaintiff's construction of the access road. We conclude that the trial court incorrectly interpreted § 22a-40 (a) (1) and that, when properly construed, the agency did not have jurisdiction over the construction of the plaintiff's gravel access road.

As the present case requires us to discern the meaning of a statute, our analysis of § 22a-40 (a) (1) is guided by General Statutes § 1-2z and standard principles of statutory construction. See *Lieberman* v. *Aranow*, 319 Conn. 748, 756–58, 127 A.3d 970 (2015). Additionally, we recognize that "exemptions to statutes are to be strictly construed . . . and . . . those who claim the benefit of an exception under a statute have the burden of proving they come within the limited class for whose benefit it was established." *Taylor* v. *Conservation Commission*, 302 Conn. 60, 68, 24 A.3d 1199 (2011); *Conservation Commission* v. *Price*, 193 Conn. 414, 424, 479 A.2d 187 (1984). The proper interpretation of a statute presents us with a question of law. *North Haven* v. *Planning & Zoning Commission*, 220 Conn. 556, 561, 600 A.2d 1004 (1991). We therefore exercise plenary review over the plaintiff's claim. *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 413, 908 A.2d 1033 (2006).

The overarching purpose of the inland wetlands and watercourses statutory scheme is to protect Connecticut's wetlands and watercourses from "random, unnecessary, undesirable and unregulated uses, disturbance or destruction" by "providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources . . . ." General Statutes § 22a-36; see also *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 718–19, 563 A.2d 1339 (1989). The statute therefore strikes a balance between ensuring the long-term viability of wetlands ecosystems and encouraging beneficial social and economic activities. See *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 354, 362 A.2d 948 (1975) ("[the] laudable state policy [of the statute] must be balanced [against] the interests of the private landowner who wishes to make productive use of his wetland").

Section 22a-40 (a) (1), however, establishes an explicit exception for certain agricultural activities, including "[g]razing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or

less essential to the farming operation . . . ." Under Connecticut law, the definition of " 'farming' " encompasses, among numerous other activities, forestry. General Statutes § 1-1 (q). Accordingly, a landowner undertaking such activities may perform them as of right and need not seek the approval of a municipal wetlands agency. The statute does carve out some activities that are not subject to the blanket agricultural exemption and are therefore within the regulatory ambit of the municipal wetlands agencies: "The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, filling or reclamation of wetlands or watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale . . . ." General Statutes § 22a-40 (a) (1). It is the phrase "road construction or the erection of buildings not directly related to the farming operation" that serves as the basis of the parties' present dispute over whether the agency had the authority to attach special conditions to its permit authorizing the plaintiff's access road.

The plaintiff argued before the trial court that its access road—which was directly related to its forestry activities and did not require the filling of any wetlands—was permitted as of right under § 22a-40 (a) (1) and that the agency did not have jurisdiction to impose the permit conditions that it did. In response, the agency argued that it could regulate the plaintiff's road because the plain meaning of § 22a-40 (a) (1) provides the agency with jurisdiction over all road construction of any type whatsoever. Specifically, the agency asserted that the word "or" in the phrase "[t]he provisions of this subdivision shall not be construed to include road construction *or* the erection of buildings not directly related to the farming operation"; (emphasis added) General Statutes § 22a-40 (a) (1); should properly be construed to mean that road construction, even if directly related to a farming operation, should always be subject to the agency's jurisdiction. In other words, the agency urged that the word "or" should be read disjunctively so that the phrase "not directly related to the farming operation" modifies "erection of buildings" but not "road construction."

The trial court agreed with the agency's position and concluded that the plain meaning of § 22a-40 (a) (1) provides municipal wetlands agencies with the jurisdiction to regulate all types of road construction. In reaching its conclusion, the trial court relied heavily on the Appellate Court's decision in *Red 11, LLC* v. *Conservation Commission*, 117 Conn. App. 630, 645–46, 980 A.2d 917, cert. denied, 294 Conn. 918, 984 A.2d 67 (2009), in which that court, in construing the phrase "filling or

reclamation of wetlands *or* watercourses with continual flow" in § 22a-40 (a) (1), determined that the word "or" should be read in the disjunctive. (Emphasis added.) Relying on the rule of statutory construction that a word used multiple times in the same statute should be ascribed a consistent meaning throughout, the trial court read the word "or" at issue disjunctively, given the disjunctive reading of "or" elsewhere in § 22a-40 (a) (1) by the Appellate Court. See *In re Jusstice W.*, 308 Conn. 652, 664, 65 A.3d 487 (2012) ("where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance" [internal quotation marks omitted]). Additionally, the trial court found that construing § 22a-40 (a) (1) to subject all road construction to regulation was consistent with the overall purpose of the statute and furthered the legislative trend of providing wetlands with increased protection. Upon our own reading of the statute, however, we conclude that the trial court incorrectly construed the statute and that when read properly, the agency did not have jurisdiction to regulate the construction of the plaintiff's access road.

First, the plain language of the text of § 22a-40 (a) (1), as evinced by the legislature's sentence structure and use of punctuation, makes it clear that road construction directly related to farming operations is exempt from the regulatory oversight of municipal wetlands agencies. We have previously recognized that "[a]lthough punctuation is not generally considered an immutable aspect of a legislative enactment . . . it can be a useful tool for discerning legislative intent." (Internal quotation marks omitted.) *Bateson* v. *Weddle*, 306 Conn. 1, 17, 48 A.3d 652 (2012); *In re Jusstice W.*, supra, 308 Conn. 661–62; *State* v. *Dennis*, 150 Conn. 245, 248, 188 A.2d 65 (1963). Likewise, "[a] statute's plain meaning must be enforced, of course, and the meaning of a statute will typically heed the commands of its punctuation." *United States National Bank of Oregon* v. *Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 454, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993). The United States Court of Appeals for the District of Columbia Circuit aptly observed when addressing the role of punctuation in statutory interpretation: "The idea that we should entirely ignore punctuation would make English teachers cringe. . . . [S]tuffing punctuation to the bottom of the interpretive toolbox would run the risk of distorting the meaning of statutory language . . . and one component of written language is grammar, including punctuation." *NACS* v. *Board of Governors of the Federal Reserve System*, 746 F.3d 474, 486 (D.C. Cir. 2014), cert. denied,    U.S.    , 135 S. Ct. 1170, 190 L. Ed. 2d 911 (2015).

Under the recognized precepts of English usage and grammar, a comma is usually employed to separate distinct items in a list. See generally W. Strunk & E. White, The Elements of Style (Pearson 4th Ed. 2000)

pp. 2–3. Accordingly, as dictated by its punctuation and structure, § 22a-40 (a) (1) lists five distinct activities that are subject to agency oversight, namely: (1) road construction or the erection of buildings not directly related to farming operations; (2) the relocation of watercourses with continual flow; (3) the filling or reclamation of wetlands or watercourses with continual flow; (4) clear cutting of timber for purposes other than increasing crop land; and (5) the mining of soils or other materials from wetlands for commercial sale. There is no comma separating "road construction" from "or the erection of buildings not directly related to the farming operation" in § 22a-40 (a) (1) that would thereby require all road construction for any purpose to be subject to regulation, as the agency urges. We therefore conclude that the modifying phrase, "not directly related to the farming operation," applies with equal force to both "road construction" and "the erection of buildings."[8] Had the legislature intended all road construction, and not just that unrelated to agricultural activity, to be regulated, it could have included a comma after "road construction," thus setting road construction apart as its own separate category subject to regulation. See *United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (discerning plain meaning of statute on basis of "grammatical structure of the statute"); *Bateson* v. *Weddle*, supra, 306 Conn. 17 (applying "[the] rules of English grammar to the sentence structure" to determine meaning); *Citizens Against Overhead Power Line Construction* v. *Connecticut Siting Council*, 139 Conn. App. 565, 574–75, 57 A.3d 765 (2012) (relying on placement of commas to conclude statute lists four distinct scenarios), aff'd, 311 Conn. 259, 86 A.3d 463 (2014).

Furthermore, we are mindful of the maxim that when presented with vying interpretations of a statute, we should "adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Internal quotation marks omitted.) *Kraiza* v. *Planning & Zoning Commission*, 304 Conn. 447, 454, 41 A.3d 258 (2012). To adopt the interpretation of the trial court would, however, result in unreasonable outcomes. For example, to read "road construction" as a separate regulated activity from "the erection of buildings not directly related to the farming operation" would lead to a municipal wetlands agency regulating only certain parts of a discrete agricultural activity. Consider an agricultural landowner who decides to construct a new barn or silo for his farm on a portion of his property that contains wetlands. Under § 22a-40 (a) (1), the landowner is permitted to undertake the new building construction as of right and the local wetlands agency would have no jurisdiction over the landowner's activity. Under the trial court's interpretation, however, the local wetlands agency would have jurisdiction to regulate the construc-

tion of a farm road leading to the new barn but not the construction of the barn itself. Such a result is plainly unreasonable and does nothing to further the goals of the Inland Wetlands and Watercourses Act.[9] Rather, we conclude that the meaning of the statute is plain on its face, such that it consistently vests jurisdiction in local wetlands agencies only where road construction and the erection of buildings is *not* directly related to farming operations.

Additionally, we observe that the decision of the Appellate Court that the trial court relied on in reaching its own interpretation, *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 630, is distinguishable from the question of statutory interpretation in the present case. In *Red 11, LLC*, the Appellate Court was required to interpret the phrase "filling or reclamation of wetlands or watercourses with continual flow" in § 22a-40 (a) (1). The principal issue before the Appellate Court was whether that phrase applied to all wetlands or only wetlands with continual flow. *Red 11, LLC* v. *Conservation Commission*, supra, 644. The Appellate Court read the word "or" in the phrase "wetlands or watercourses with continual flow" disjunctively. Id., 645–46. This was, however, due to the fact that in previous decisions the court had read the phrase "with continual flow" to apply only to watercourses and *not* to wetlands. Id., 646–47. There is no analogue in the present case; we have never held that the language "not directly related to the farming operation" applies only to the erection of buildings and not road construction. Although the trial court and the agency are correct that we should strive to interpret the language of statutes in an internally consistent manner; *In re Jusstice W.*, supra, 308 Conn. 664–65; we need not clash with prior decisions and the overall purpose of particular statutes in doing so. See *New England Road, Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 186, 61 A.3d 505 (2013).

Finally, all parties rely, to varying degrees, on our previous decision in *Taylor* v. *Conservation Commission*, supra, 302 Conn. 60, which the plaintiff suggests is controlling on the present case. We briefly note that our decision in the present case leaves our decision in *Taylor* undisturbed. In *Taylor*, we addressed whether § 22a-40 (a) (1) permits an agricultural landowner to fill wetlands as of right in order to construct roads directly related to the farming operation. Id., 61–62. We specifically declined in that instance to address the claim that we resolve in the present case, namely whether the construction of roads directly related to farming operations is itself permitted as of right. Id., 67 n.10. Rather, in *Taylor* we determined that § 22a-40 (a) (1) does not permit the filling of wetlands for the purpose of road construction, regardless of the road's relation to the farming operation, because the statute clearly provides for the regulation of activities that

require wetlands to be filled. Id., 70.

In conclusion, the plain language of § 22a-40 (a) (1) provides that road construction directly related to a farming operation is excluded from the regulatory oversight of municipal wetlands agencies, unless the manner of that construction implicates some other matter within the scope of that oversight, as in *Taylor*. Accordingly, the agency had no jurisdiction to attach special conditions to the plaintiff's gravel access road into the northeast compartment, as the road was to be constructed solely for the purpose of transporting equipment onto the property to complete forestry work. We therefore conclude that the trial court improperly determined that the agency had jurisdiction over the plaintiff's access road and improperly rendered judgment dismissing the plaintiff's appeal.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other justices concurred.

[1] General Statutes § 22a-40 provides in relevant part: "(a) The following operations and uses shall be permitted in wetlands and watercourses, as of right:

"(1) Grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming operation, and activities conducted by, or under the authority of, the Department of Energy and Environmental Protection for the purposes of wetland or watercourse restoration or enhancement or mosquito control. The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, filling or reclamation of wetlands or watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale . . . ."

[2] The Commissioner of Energy and Environmental Protection was also named as a defendant in the trial court but is not a party to this appeal.

[3] The management plan noted that the northeast compartment forest is a mixed hardwood forest type and contains various species of hickory (carya), oak (Quercus), and maple (Acer), with additional occurrences of tulip (Liriodendron tulipfera), ash (Fraxinus americana), cherry (Prunus serotina), sweetgum (Liquidambar styraciflua), and sourgum (Nyssa sylvatica). The northeast compartment also contains scattered occurrences of evergreen species such as Eastern white pine (Pinus strobus), Eastern hemlock (Tsuga canadensis), and red cedar (Juniperus virginiana).

[4] The management plan noted the abundance of invasive shrubs and vines in the northeast compartment and explained that these invasive species, which are nonnative to a local ecosystem, can outcompete and threaten indigenous species, inflicting detriment on the overall ecosystem. The invasive species present in the northeast compartment include Japanese barberry (Berberis thunbergii), Oriental bittersweet (Celastrus orbiculatus), multiflora rose (Rosa multiflora), winged euonymus (Euonymus alatus), and autumn olive (Elaeagnus umbellata).

[5] In their arguments both before the agency and the trial court, the intervenors consistently suggested that the plaintiff's forestry operations are being used to mask an ultimate goal of turning the northeast compartment into a residential housing development. In their briefing before this court, the intervenors again voice their suspicions about the plaintiff's motives. The intervenors' concerns, however, are unrelated to the subject of the agency's initial decision and are not relevant to our resolution of the current appeal.

[6] General Statutes (Rev. to 2011) § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal

entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

[7] Section 2.1 of the Inland Wetlands and Watercourses Regulations of the Town of Greenwich defines a " '[v]ernal [p]ool' " as "a seasonal or permanent watercourse in a defined depression or basin that lacks a fish population and supports or is capable of supporting breeding and development of amphibian or invertebrate species recognized as obligate to such watercourses."

[8] This is also the interpretation of the statute favored by the Department of Energy and Environmental Protection (department), which has ultimate oversight over the protection of Connecticut's inland wetlands and watercourses. A publication of the department construes the statute to exempt both road construction and the erection of buildings directly related to the farming operation from regulation by municipal wetlands agencies. See Connecticut Department of Environmental Protection, Agriculture, Forestry, and Wetlands Protection in Connecticut, pp. 6–9, available at http://www.ct.gov/deep/lib/deep/water_inland/wetlands/agriculture_forestry_and_wetlands_protection_in_ct.pdf (last visited June 15, 2016). In an earlier stage of the present case, the Commissioner of Energy and Environmental Protection (commissioner) participated in one of the cases filed by the intervenors and argued in favor of the construction of the statute contained in the department's publication. The commissioner subsequently withdrew from that case and did not participate in the present appeal. We recognize that it is the "well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 140, 680 A.2d 1329 (1996). "We have determined [however] that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . [A]n agency's interpretation of a statute is [time-tested] when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable." (Internal quotation marks omitted.) *Tilcon Connecticut, Inc.* v. *Commissioner of Environmental Protection*, 317 Conn. 628, 649, 119 A.3d 1158 (2015). The commissioner did not argue that the department's interpretation of the statute was time-tested.

[9] All of the parties argue that in making its decision, the trial court impermissibly elevated the legislative goal of protecting wetlands over the vying legislative goal of encouraging agricultural activity. Likewise, the parties assert that this court, no matter how we construe the statute, will be improperly elevating one legislative goal over the other. We observe, however, that the legislature has already determined its preferred balance between these two competing goals in the form of § 22a-40 (a) (1) itself, which broadly exempts agricultural activity from regulation, with the exception of several specific activities.

_____