41 A.3d 258 (2012)
304 Conn. 447
Harry KRAIZA, Jr.
v.
PLANNING AND ZONING COMMISSION OF the TOWN OF HARTLAND.
No. 18667.
Supreme Court of Connecticut.
Argued January 9, 2012.
Decided April 24, 2012.
*259 Kenneth R. Slater, Jr., Hartford, for the appellant (plaintiff).
Mary E.R. Bartholic, with whom was Thomas W. Witherington, Hartford, for the appellee (defendant).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
ZARELLA, J.
The plaintiff, Harry Kraiza, Jr., appeals from the judgment of the Appellate Court affirming the trial court's dismissal of his appeal from the denial of his subdivision application by the defendant, the planning and zoning commission of the town of Hartland (commission).[1] On appeal, the plaintiff claims that the Appellate Court incorrectly interpreted the Hartland zoning and subdivision regulations[2] when it *260 agreed with the commission that the proposed dead-end street that provides the only access to the subdivided lots on his property constitutes an extension of an existing loop road on adjacent property and that the combined length of the two roads exceeds the permissible length for a permanent dead-end street. The commission responds that the Appellate Court correctly interpreted the regulations. We agree with the plaintiff and reverse the judgment of the Appellate Court.
The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "On or about June 11, 2007, the plaintiff filed an application with the commission seeking approval of a proposed eight lot subdivision on his 19.57 acre property, located in the town of Hartland. The east side of the plaintiff's property adjoins Hartland's boundary with the town of Granby. The south side of the plaintiff's property adjoins the Eastwood subdivision. Access to the lots in the Eastwood subdivision is provided by Eastwood Drive ... which was approved as part of that subdivision plan. Eastwood Drive intersects with Route 20 and extends into the Eastwood subdivision for approximately 850 feet, where it divides into two sections forming a loop. Ten lots are located on the outside of the loop and four lots within it. The total length of Eastwood Drive, including the loop, is approximately 3500 feet. Included on the Eastwood final subdivision plan is a[50] foot wide reserve strip labeled `Reserved For Future Road,' which runs from the loop section of Eastwood Drive to the boundary of the plaintiff's property. The plaintiff's proposal included a dead-end street, Hazel Lane, to provide access to the lots by connecting to Eastwood Drive over the reserve strip. Hazel Lane extends approximately 1100 feet into the subdivision, forming a cul-de-sac....
"The commission hired Martin J. Connor, a planning consultant, to offer his expert opinion as to whether the plaintiff's proposal complied with the regulations. Connor opined that Hazel Lane did comply with the 1200 foot regulatory limitation for permanent dead-end streets because it measured only 1100 feet in length. He further opined that the length of Hazel Lane should not be combined with that of Eastwood Drive when assessing whether the plaintiff's proposal complied with the regulations.[3]
"Notwithstanding Connor's recommendation, and after concluding a public hearing on November 19, 2007, that had *261 extended over multiple evenings, the commission, on January 17, 2008, unanimously voted to deny the plaintiff's application, finding that it was in violation of §§ [I-1 J][4] and [I-6 A 2][5] of the [subdivision] regulations because Eastwood Drive and Hazel Lane combined to form an extended dead-end street with a total length exceeding the 1200 foot regulatory limitation. The plaintiff appealed to the Superior Court, which, on December 17, 2008, affirmed the commission's denial of his application."[6] (Citations omitted.) Kraiza v. Planning & Zoning Commission, 121 Conn.App. 478, 480-82, 997 A.2d 583 (2010). Thereafter, the plaintiff, on the granting of certification, appealed to the Appellate Court.
In affirming the trial court's judgment, the Appellate Court concluded that the plain language and context of the regulations demonstrate that they apply to both existing and newly proposed dead-end streets; id., at 485-86, 490, 997 A.2d 583; and that a loop road, such as Eastwood Drive, fits within the definition of a dead-end street because it has only one means of ingress or egress. Id., at 495-96, 997 A.2d 583. The court also concluded that the commission had not arbitrarily reinterpreted the subdivision regulations in considering the plaintiff's application and determining that Eastwood Drive is a dead-end street because there was no evidence in the record regarding the commission's reasons for approving the Eastwood subdivision, and, therefore, its approval did not constitute proof that Eastwood Drive is not a dead-end street. Id., at 496-97, 997 A.2d 583. This court subsequently granted the plaintiff's petition for certification to *262 appeal, limited to the following issue: "Did the Appellate Court properly determine that the [commission] properly denied the plaintiff's application to subdivide his property?" Kraiza v. Planning & Zoning Commission, 298 Conn. 904, 3 A.3d 70 (2010).
On appeal, the plaintiff argues that the commission improperly denied his application on the ground that Hazel Lane is an extension of Eastwood Drive and that the combined length of the two roads forms a single dead-end street that exceeds the length permitted under the subdivision regulations.[7] The commission responds that it properly viewed the two roads as forming one continuous road and properly applied the regulations on the basis of that understanding because Route 20 provides the only means of ingress and egress to the Eastwood subdivision and the plaintiff's property. We agree with the plaintiff.
We begin with the applicable standard of review. "Generally, it is the function of a zoning board ... to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. [In turn] [t]he ... court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts.... In applying the law to the facts of a particular case, the board is endowed with ... liberal discretion, and its action is subject to review ... only to determine whether it was unreasonable, arbitrary or illegal.... Moreover, the plaintiffs bear the burden of establishing that the board acted improperly....
"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes.... [A]n agency's factual and discretionary determinations are to be accorded considerable weight.... Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.... Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny ... the agency is not entitled to special deference.... [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law.... These principles apply equally to regulations as well as to statutes." (Internal quotation marks omitted.) Alvord Investment, LLC v. Zoning Board of Appeals, 282 Conn. 393, 408-409, 920 A.2d 1000 (2007).
We have also stated that "zoning regulations are local legislative enactments... and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes.... Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended.... The process of statutory interpretation involves the determination of the *263 meaning of the statutory language [or in this case, the relevant zoning regulation] as applied to the facts of the case, including the question of whether the language does so apply....
"Because zoning regulations are in derogation of common-law property rights, they must be strictly construed and not extended by implication.... Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant.... The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible.... When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Citations omitted; internal quotation marks omitted.) Graff v. Zoning Board of Appeals, 277 Conn. 645, 652-53, 894 A.2d 285 (2006).
Section II-5 of the zoning regulations provides that a "[s]ubdivision shall be permitted only in conformance with the regulations governing the subdivision of land entitled `Requirements for the Approval of Subdivision Plans in the Town of Hartland'...."
Section I-1 D of the subdivision regulations defines "street" as "any private street and any public street, as further defined herein. `Public street' shall mean any street already dedicated and accepted for public travel (i) by the ... General Statutes or (ii) by the Town of Hartland.... `Private street' shall mean any street that is not a public street, including any right of way recorded in the Land Records of the Town of Hartland, which is used or to be used for public access to (a) any lot of record or (b) any lot sold or set apart in accordance with the Zoning Regulations and amendments thereto." Section I-1 E further defines "reserve strip" as meaning and including "areas for which future public use is intended for street connections and for street or pedestrian ways giving access to land dedicated to public use."
Insofar as the subdivision regulations address design specifications, § I-6 A 1 provides in relevant part that, "[e]xcept where impracticable because of topography or other conditions, all [private streets not already dedicated and accepted for public travel by the state and the town of Hartland] shall join each other so that for a distance of at least one hundred (100) feet before joining the street is at right angles or radial to the street it joins.... No streets shall intersect or meet at an angle of less than sixty (60) degrees or more than one hundred and twenty (120) degrees." The subdivision regulations also provide that "[n]o subdivision shall be approved unless the area to be subdivided shall have frontage on and access from [an] existing public street.... Proposed streets shall be in harmony with existing or proposed arterial streets ... especially with regard to safe intersections with such thoroughfares."[8]
With respect to dead-end streets, § I-1 J of the subdivision regulations defines such a street as "any street described in paragraph D of this Section which is used for access to any current lot of record, and which presently provides only one means of ingress or egress." In addition, § I-6 A 2 provides in relevant part: "Arrangement of streets shall provide for the continuation of the principal streets in adjoining subdivision, *264 or for their proper projection when adjoining property is not subdivided. Permanent dead-end streets shall not exceed 1200 feet in length and shall be equipped with a turn-around roadway with a minimum radius of forty-five (45) feet for the outside curb at the closed end. Such turn-around roadway shall include a right of way with a minimum width of fifty (50) feet, measured from the outside curb at the closed end and continuing to an adjoining property line...."
We conclude, on the basis of the plain language of the regulations, that the Appellate Court incorrectly determined that Hazel Lane constitutes an extension of Eastwood Drive and that the combined length of the two roads exceeds the permissible length for a permanent dead-end street. Hazel Lane and Eastwood Drive are separate and distinct roads, and thus cannot be combined to determine compliance with the regulations, because Hazel Lane, as proposed in the site development plan, is not laid out as a continuation of Eastwood Drive but intersects with Eastwood Drive in conformance with § I-6 A 1 of the subdivision regulations. As previously discussed, § I-6 A 1 provides that, in cases of intersecting streets, meaning more than one street, "all streets shall join each other so that for a distance of at least one hundred (100) feet before joining the street is at right angles or radial to the street it joins...." In this case, the site development plan shows Hazel Lane not only intersecting with Eastwood Drive at a perfect right angle but continuing into the subdivided property for approximately 365 feet, far more than the required 100 feet, before curving gently in a more northerly direction toward its terminus. Moreover, Eastwood Drive does not make an abrupt right angle turn where Hazel Lane beginswhich might be reason to conclude that Hazel Lane represents an extension of an existing roadbut continues past Hazel Lane to form a one-half mile loop. Accordingly, Eastwood Drive and Hazel Lane intersect in a manner conforming with language in the subdivision regulations clearly referring to two separate roads.
In addition, the approved Eastwood subdivision plan describes the fifty foot wide reserve strip from Eastwood Drive to the subdivided property over which Hazel Lane is located as "Reserved For Future Road," thus indicating not only that such a road was always contemplated by the local authorities but that the road was not intended to be a continuation of Eastwood Drive.
The subdivision regulations also repeatedly state that the function of streets is to provide "access" to land, specifically, "public access to (a) any lot of record or (b) any lot sold or set apart in accordance with the Zoning Regulations and amendments thereto"; Hartland Subdivision Regs., § I-1 D; "access to land dedicated to public use"; id., at § I-1 E; and "access to any current lot of record...." Id., at § I-1 J. Although the term "access" is not defined in the subdivision regulations, it is commonly understood in the context of real property law to mean "the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the highway without obstruction." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990); see also 83 Am.Jur.2d 179, Zoning and Planning § 163 (2003) (defining "access" as "a landowner's legal right to pass from his land to the highway and to return without being obstructed"). Consequently, because Hazel Lane provides access only to the plaintiff's subdivided lots and Eastwood Drive provides access only to lots within the Eastwood subdivision, Eastwood Drive and Hazel *265 Lane must be considered two separate roads.
Furthermore, both the trial court and the Appellate Court expressly recognized that Eastwood Drive does not provide access to the subdivided lots and distinguished between the two roads, thus indirectly acknowledging that Eastwood Drive and Hazel Lane cannot be considered one continuous road. The trial court stated in its memorandum of decision that "[a]ccess to the lots within the Eastwood subdivision is provided by a public road known as Eastwood Drive" and that the plaintiff's proposed eight lot subdivision "includes access into the property on a proposed road (to be known as Hazel Lane) which will connect to Eastwood Drive over the reserve strip...." Similarly, the Appellate Court stated in its decision that "[t]he plaintiff's proposal included a dead-end street, Hazel Lane, to provide access to the lots by connecting to Eastwood Drive over the reserve strip." Kraiza v. Planning & Zoning Commission, supra, 121 Conn.App. at 480-81, 997 A.2d 583.
Finally, the commission's planning consultant, Connor, implicitly recognized that Eastwood Drive and Hazel Lane are two separate roads by repeatedly distinguishing between them in his analysis and describing them in different terms. See footnote 3 of this opinion. The fact that the roads have two different names is also evidence of their separate, physical identity. Accordingly, the cumulative effect of these considerations supports the conclusion that Eastwood Drive and Hazel Lane are two distinct roads, and the commission should not have considered them as one combined road in applying the regulations.
Having concluded that Hazel Lane is not a continuation of Eastwood Drive, we further conclude that Hazel Lane satisfies the definition of a permanent dead-end street. It is less than 1200 feet in length and is equipped with a turnaround and a right-of-way at its "closed end" that comply with the subdivision regulations. In addition, Hazel Lane has only one means of ingress and egress, namely, its intersection with Eastwood Drive.
To the extent the commission argues that the plaintiff's application should not be approved because Eastwood Drive is a dead-end street and one dead-end street should not be allowed to branch off another,[9] there is nothing in the record to support it. The subdivision regulations do not provide that a dead-end street must intersect with a through road or a principal thoroughfare, nor do they prohibit a subdivision plan in which one dead-end street branches off another.[10] Moreover, even if we agreed in theory with the commission that the subdivision regulations do not allow for one dead-end street to branch off another, we do not agree that Eastwood Drive satisfies the definition of a dead-end street.
As previously noted, "[t]he regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible." (Internal quotation marks omitted.) Graff v. Zoning Board of Appeals, supra, 277 Conn. at 653, 894 A.2d 285; accord Planning & Zoning Commission v. Gilbert, 208 Conn. 696, 706, 546 A.2d 823 (1988). The subdivision regulations, *266 considered in their totality, set forth two basic requirements, in addition to the limitation on length, for a street to be designated as a dead-end street. Section I-1 J first provides that a "`[d]ead-end [s]treet'" must have only "one means of ingress or egress." Section I-6 A 2 further provides that "[p]ermanent dead-end streets ... shall be equipped with a turn-around roadway with a minimum radius of forty-five (45) feet for the outside curb at the closed end. Such turn-around roadway shall include a right of way with a minimum width of fifty (50) feet, measured from the outside curb at the closed end and continuing to an adjoining property line."
Eastwood Drive fails to satisfy the first requirement that there be only one means of ingress or egress because vehicles located on any part of the loop may travel in either direction to reach the stem and exit onto Route 20. In other words, there are two means of ingress and egress from any lot on the loop, depending on whether one chooses to travel in a clockwise or counterclockwise direction. Moreover, the road is designed so that even if drivers at the top of the stem want to turn their vehicles around, they may travel around the loop in either direction before returning to the stem and exiting onto Route 20. The Appellate Court reached a similar conclusion when it considered whether a loop road fit within the definition of a "cul-de-sac." 200 Associates, LLC v. Planning & Zoning Commission, 83 Conn.App. 167, 173-74, 851 A.2d 1175 (ordinary meaning of cul-de-sac "is a blind alley or a street open at one end only, or a street closed at one end, usually with a turnaround at the closed end, which does not describe ... a loop road that allows traffic to flow in two directions"), cert. denied, 271 Conn. 906, 859 A.2d 567 (2004); see also Springborn v. Falmouth, 769 A.2d 852, 857 (Me.2001) (concluding that looping design of circular drives within subdivision did not create "dead-end condition" because they did not have "a single `point of turnaround'" but "circle[d] around, without definite terminus," thus "allow[ing] each individual lot to be approached from two directions"). Eastwood Drive also fails to satisfy the single means of ingress or egress requirement because, as expressed in the professional opinion of the commission's planning consultant, the road considered in its entirety would have more than one means of ingress and egress following the construction of Hazel Lane, namely, Route 20 and Hazel Lane.
The second requirement of a turnaround roadway with a closed end is no less problematic. Although the subdivision regulations contain no definition of "turnaround," the term in common parlance means "a space (as in a widened section of a driveway) designed to permit the turning around of a vehicle...." Webster's Third New International Dictionary; see also The American Heritage Dictionary of the English Language (5th Ed. 2011) ("turnaround" is "[a] space, as in a driveway, permitting the turning around of a vehicle"). Accordingly, we agree with the dissenting justice in the Appellate Court that "[t]he language `turn-around roadway' strongly suggests that a dead-end street is one in which drivers would have to turn around in order to get out; hence, the minimum radius requirement for the turnaround. The language `closed end' also strongly suggests the same thing, namely, that a dead-end street is one that has an end that is closed to getting out; hence, the requirement that there be a right-of-way with a minimum width at the closed end." Kraiza v. Planning & Zoning Commission, supra, 121 Conn.App. at 501, 997 A.2d 583 (Borden, J., dissenting). In other words, a "turnaround," as used in Hartland's specifications for constructing a *267 dead-end street, means a constricted space sufficient to enable a vehicle to turn around and reverse direction without backing up. Eastwood Drive consists of a 2650 foot loop containing four interior and ten exterior lots located at the end of an 850 foot stem that connects with Route 20. This loop cannot, by any reasonable stretch of the imagination, be regarded as a "turn-around roadway" with a "closed end" in the manner contemplated by the subdivision regulations. Hartland Subdivision Regs., § I-6 A 2. "Because zoning [and subdivision] regulations are in derogation of common-law property rights, they must be strictly construed and not extended by implication." Graff v. Zoning Board of Appeals, supra, 277 Conn. at 653, 894 A.2d 285. We therefore conclude that Eastwood Drive does not fit within the definition of a "dead-end street."
We finally observe that the fact that the subdivision regulations do not include the terms "cul-de-sac" or "loop road" does not mean that such roads do not exist or that they must be considered under another category included in the regulations, such as a dead-end street. See Kraiza v. Planning & Zoning Commission, supra, 121 Conn.App. at 502, 997 A.2d 583 (Borden, J., dissenting). The record demonstrates that the commission has amended the subdivision regulations at least twice in the fairly recent past, and, accordingly, if it wishes to amend them again to address matters previously neglected, it has the authority and opportunity to do so. For all of the foregoing reasons, we conclude that the Appellate Court incorrectly determined that the commission properly denied the plaintiff's application to subdivide his property.[11]
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case to the trial court with direction to render judgment sustaining the plaintiff's appeal.
In this opinion the other justices concurred.
NOTES
[1] Roy Champagne, an owner of property abutting the plaintiff's property, intervened in the trial court proceedings. He did not participate in this appeal.
[2] We refer to the "Hartland Requirements for Subdivision Plans" as the Hartland subdivision regulations, which are to be distinguished from the Hartland zoning regulations. We hereinafter refer to the zoning and subdivision regulations collectively as the regulations.
[3] Connor further explained: "Eastwood [Drive] would not be described as a permanent dead-end street according to the [r]egulations. It is not `equipped with a turn-around roadway with a minimum radius of forty-five (45) feet for the outside curb at the closed end.' It would be better described as a `loop' or `lollipop' road. A permanent dead-end road is usually described as a cul-de-sac. If Hazel Lane is approved by the [c]ommission, Eastwood [Drive] would not meet the definition of a dead-end street as there would be more than one means of ingress or egress. One could enter or exit Eastwood [Drive] from Hartland [Boulevard] (Route 20) or from Hazel Lane. Hazel Lane clearly would meet the definition of a permanent dead-end street but it is less than 1200 feet in length. In reviewing the approved Eastwood [s]ubdivision [p]lan it is clearly marked on the plan that the land between lots 8 and 9 was to be reserved for a future road. This plan approved by the [c]ommission clearly alerted the public and buyers in that subdivision of a future plan for a roadway extension into the land owned by Harry Kraiza. This is further evidence the [c]ommission did not intend for Eastwood [Drive] to be a permanent dead-end street. In my opinion Hazel Lane meets the definition of a permanent dead-end street but with the approval of Hazel Lane, Eastwood Drive would no longer be considered a dead-end street because you can enter or leave it on two different streets, Hartland [Boulevard] (Route 20) and . . . Hazel Lane."
[4] Section I-1 J of the Hartland subdivision regulations provides: "`Dead-end Street' shall mean any street described in paragraph D of this Section which is used for access to any current lot of record, and which presently provides only one means of ingress or egress."

Section I-1 D of the Hartland subdivision regulations provides in relevant part: "`Street' shall mean, for purposes of these subdivision regulations, any private street and any public street, as further defined herein. `Public street' shall mean any street already dedicated and accepted for public travel (i) by the .. . General Statutes or (ii) by the Town of Hartland pursuant to procedures substantially similar to those set forth in Section I-6-(D) hereof or by legislative action of the Town of Hartland. `Private street' shall mean any street that is not a public street, including any right of way recorded in the Land Records of the Town of Hartland which is used or to be used for public access to (a) any lot of record or (b) any lot sold or set apart in accordance with the Zoning Regulations and amendments thereto."
[5] Section I-6 A 2 of the Hartland subdivision regulations provides in relevant part: "Arrangement of streets shall provide for the continuation of the principal streets in adjoining subdivision, or for their proper projection when adjoining property is not subdivided. Permanent dead-end streets shall not exceed 1200 feet in length and shall be equipped with a turn-around roadway with a minimum radius of forty-five (45) feet for the outside curb at the closed end. Such turn-around roadway shall include a right of way with a minimum width of fifty (50) feet, measured from the outside curb at the closed end and continuing to an adjoining property line...."
[6] The trial court concluded that "the commission was well within its proper discretion in determining that these two dead-end streets must be added together to determine whether they exceed 1200 feet. There is nothing in the regulations which says that when additions are made to an existing road each new addition is considered a new road for purposes of the 1200 foot limitation.... The commission's interpretation is in accord with the plain language of the applicable sections of the regulations....

"Contrary to the plaintiff's argument, the commission correctly determined that Eastwood Drive is a dead-end street because it meets the definition of a dead-end street in [§] I-1 J: It provides access to current lots and has only one means of ingress and egress at the intersection with Route 20."
[7] The plaintiff specifically claims that the Appellate Court incorrectly concluded that (1) the length of Hazel Lane should be determined by aggregating its length with Eastwood Drive, and (2) the length limitation for dead-end streets applies to Eastwood Drive, which is configured as a loop. We consider these two claims, however, as different ways of articulating a single claim that the Appellate Court incorrectly concluded that Hazel Lane is a continuation of Eastwood Drive and, therefore, that the combined length of the two roads exceeds the permissible length of a permanent dead-end street.
[8] We note that this provision was added to the regulations in 2005 but was not assigned a number.
[9] This is essentially identical to the commission's argument that Eastwood Drive and Hazel Lane constitute one, long dead-end street for which the only means of ingress and egress is the intersection of Eastwood Drive and Route 20.
[10] Accordingly, we are not persuaded by the commission's contention that the only means of ingress and egress for Hazel Lane is by way of Route 20 because it is a through street, unlike Eastwood Drive.
[11] We do not address the plaintiff's claim that the Appellate Court improperly supplied legislative intent to a land use regulation when the legislative history of the regulation is silent and the language of the regulation reveals no particular legislative purpose because we find no ambiguity in the meaning of the regulations and thus need not turn to the legislative history.